# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MARY LOUIS AND MONICA
DOUGLAS, on behalf of themselves and all
others similarly situated, and COMMUNITY
ACTION AGENCY OF SOMERVILLE,
INC.,

     Plaintiffs,

     v.

SAFERENT SOLUTIONS, LLC, and
METROPOLITAN MANAGEMENT
GROUP, LLC,

     Defendants.

Civil Case No. 1:22-cv-10800-AK

## MEMORANDUM IN SUPPORT OF
## DEFENDANT SAFERENT SOLUTIONS, LLC'S MOTION TO DISMISS
## PLAINTIFFS' AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

    A.    SafeRent Provides Tenant Screening Services To Housing Providers Responsible For Making Housing Decisions. ........................................................... 3

    B.    Plaintiff Douglas's And Louis's Housing Applications. ....................................... 4

    C.    Plaintiffs' Lawsuit. ................................................................................................ 4

PROCEDURAL STANDARD ............................................................................................... 5

ARGUMENT .......................................................................................................................... 6

I.    PLAINTIFFS HAVE NOT PLEADED A PRIMA FACIE CASE OF DISPARATE IMPACT UNDER ANY FAIR HOUSING LAW AT ISSUE. .................. 6

    A.    The Amended Complaint Fails To Plead A Race-Based Disparate Impact Claim. ..................................................................................................................... 6

        1.    Plaintiffs Fail To Identify An Arbitrary, Artificial, And Unnecessary Policy. ................................................................................ 7

        2.    Plaintiffs Fail To Allege A Significant Statistical Disparity. ..................... 9

        3.    Plaintiffs Fail To Satisfy The "Robust Causality Requirement." ............. 11

        4.    Plaintiffs Impermissibly Seek To Expand Disparate Impact Liability To Require Pervasive Collection And Consideration Of Information About Housing Applicants' Race. ........................................ 13

    B.    The Amended Complaint Fails To Plead A Voucher-Based Disparate Impact Claim. ..................................................................................................... 14

II.    THE FAIR HOUSING LAWS DO NOT APPLY TO SAFERENT, WHICH DOES NOT MAKE HOUSING DECISIONS. ............................................................... 15

    A.    The Fair Housing Act Does Not Apply To Third-Party Tenant Screening Services. ............................................................................................................... 15

    B.    The Massachusetts Laws Do Not Apply For Additional Reasons. ...................... 17

III.    PLAINTIFFS' DERIVATIVE CHAPTER 93A CLAIMS FAIL AS WELL. ................ 19

IV.    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS FOR VIOLATIONS OF SECTION 3604(B) OR SECTION 4(6)(B). ............................................................... 22

V.      COMMUNITY ACTION AGENCY OF SOMERVILLE LACKS STANDING............ 23

CONCLUSION.......................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. City of Indianapolis*,
  742 F.3d 720 (7th Cir. 2014) ...............................................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................................5

*Baker v. City of San Diego*,
  2022 WL 484973 (S.D. Cal. Feb. 16, 2022) .......................................................................13

*Baldwin v. Hous. Auth. of City of Camden, NJ*,
  278 F. Supp. 2d 365 (D.N.J. 2003) ...................................................................................8, 15

*Barrow v. Barrow*,
  2016 WL 6996996 (D. Mass. Nov. 29, 2016) ............................................................6, 9, 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................................13

*Beram v. Ceaco, Inc.*,
  219 F. Supp. 3d 274 (D. Mass. 2016) ..................................................................................21

*Bida v. Shuster Management LLC*,
  2019 WL 1198960 (D.N.J. Mar. 14, 2019).......................................................................8, 10

*Binns v. City of Marietta Ga. (Hous. Choice Voucher Program)*,
  704 F. App'x 797 (11th Cir. 2017) ......................................................................................10

*Burbank Apartments Tenant Ass'n v. Kargman*,
  48 N.E.3d 394 (Mass. 2016) .........................................................................................6, 7, 9

*Cablevision of Bos., Inc. v. Pub. Imp. Comm'n of City of Bos.*,
  38 F. Supp. 2d 46 (D. Mass. 1999) ......................................................................................19

*Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Authority*,
  4 F.4th 63 (1st Cir. 2021).....................................................................................................23

*City of Miami v. Bank of Am. Corp.*,
  171 F. Supp. 3d 1314 (S.D. Fla. 2016) ..................................................................................9

*Clarendon Hill Somerville, LP v. Biagioni*,
  2014 Mass. App. Div. 181 (Mass. Dist. Ct. 2014)................................................................9

*Cobb Cty., Dekalb Cty., & Fulton Cty. v. Bank of Am. Corp.*,
183 F. Supp. 3d 1332 (N.D. Ga. 2016) ...............................................................7, 9

*Coley v. Brook Sharp Realty LLC*,
2015 WL 5854015 (S.D.N.Y. Sept. 25, 2015) ..................................................8, 26

*Coll.-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination*,
508 N.E.2d 587 (Mass. 1987) .......................................................................18

*Connecticut Fair Hous. Ctr. v. Corelogic Rental Prop. Sols*,
369 F. Supp. 3d 362 (D. Conn. 2019) .........................................................17

*Crossing Over, Inc. v. City of Fitchburg*,
161 N.E.3d 432 (Mass. App. Ct. 2020) .......................................................18

*Daimler Chrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ....................................................................................23

*Darviris v. Petros*,
812 N.E.2d 1188 (Mass. 2004) ...................................................................21

*Dorrian v. LVNV Funding, LLC*,
2017 WL 2218773 (Mass. Super. Mar. 30, 2017) .......................................19

*Draper v. Healey*,
827 F.3d 1 (1st Cir. 2016) ...........................................................................24

*Driscoll v. Landmark Bank for Sav.*,
758 F. Supp. 48 (D. Mass. 1991) ................................................................21

*Duclersaint v. Fed. Nat. Mortg. Ass'n*,
696 N.E.2d 536 (Mass. 1998) .....................................................................21

*E.E.O.C. v. Steamship Clerks Union, Loc. 1066*,
48 F.3d 594 (1st Cir. 1995) .........................................................................20

*Ellis v. City of Minneapolis*,
860 F.3d 1106 (8th Cir. 2017) ......................................................................9

*Equal Means Equal v. Ferriero*,
3 F.4th 24 (1st Cir. 2021).......................................................................23, 24

*Fitzgerald v. Polar Corp.*,
2020 WL 6586628 (D. Mass. Nov. 10, 2020) .............................................21

*Frith v. Whole Foods Mkt., Inc.*,
38 F.4th 263 (1st Cir. 2022).........................................................................20

*Gelineau v. Bank of New York Mellon as Tr. for Certificateholders of CWABS 2004-5*,
2019 WL 233513 (D. Mass. Jan. 16, 2019) ............................................................................19

*Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*,
639 F.3d 1078 (D.C. Cir. 2011) .................................................................................11, 15

*Hoostein v. Mental Health Ass'n (MHA)*,
98 F. Supp. 3d 293 (D. Mass. 2015) ......................................................................................17

*Hous. Rts. Ctr. v. Donald Sterling Corp.*,
274 F. Supp. 2d 1129 (C.D. Cal. 2003) ................................................................................13

*Hoyt v. City of St. Anthony Vill.*,
2019 WL 2212147 (D. Minn. May 22, 2019).........................................................................9

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*,
920 F.3d 890 (5th Cir. 2019) ..............................................................................................13

*Inclusive Communities Project, Inc. v. U.S. Dep't of Treasury*,
2016 WL 6397643 (N.D. Tex. Oct. 28, 2016).......................................................................12

*Jancik v. Dep't of Hous. & Urb. Dev.*,
44 F.3d 553 (7th Cir. 1995) ...............................................................................................13

*Jersey Heights Neighborhood Ass'n v. Glendening*,
174 F.3d 180 (4th Cir. 1999) .............................................................................................23

*Karim-Panahi v. 4000 Massachusetts Apartments*,
302 F. Supp. 3d 330 (D.D.C. 2018)........................................................................................8

*Kolbe v. BAC Home Loans Servicing, LP*,
738 F.3d 432 (1st Cir. 2013)...................................................................................................7

*Kozaryn v. Ocwen Loan Servicing, LLC*,
784 F. Supp. 2d 100 (D. Mass. 2011) ..................................................................................20

*Lewis v. Casey*,
518 U.S. 343 (1996)..............................................................................................................23

*Lowell v. Lyft, Inc.*,
352 F. Supp. 3d 248 (S.D.N.Y. 2018)....................................................................................24

*Luceus v. Rhode Island*,
923 F.3d 255 (1st Cir. 2019)...................................................................................................9

*Mandala v. NTT Data, Inc.*,
975 F.3d 202 (2d Cir. 2020)................................................................................10, 11, 15

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*,
  775 F.3d 109 (1st Cir. 2014)...............................................................22

*Merritt v. Countrywide Fin. Corp.*,
  2015 WL 5542992 (N.D. Cal. Sept. 17, 2015).................................10

*Mian v. LoanCare Servicing Co.*,
  2022 WL 1289662 (D. Md. Apr. 29, 2022).......................................15

*Noone v. Carpenter*,
  2022 WL 1462747 (D. Mass. May 9, 2022)........................................5

*Pasquince v. Brighton Arms Apartments*,
  876 A.2d 834 (N.J. App. Div. 2005)................................................8, 9

*Raso v. Lago*,
  958 F. Supp. 686 (D. Mass. 1997)....................................................10

*Rogers v. Comcast Corp.*,
  55 F. Supp. 3d 711 (E.D. Pa. 2014).................................................20

*Southwest Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*,
  17 F.4th 950 (9th Cir. 2021)............................................................11

*Spence v. Berkshire Life Ins. Co.*,
  561 F. Supp. 2d 126 (D. Mass. 2008)..............................................21

*Steptoe v. Beverly Area Planning Assoc.*,
  674 F. Supp. 1313 (N.D. Ill. 1987)..................................................17

*Sutton v. Freedom Square Ltd.*,
  2008 WL 4601372 (E.D. Mich. Oct. 15, 2008)..................................8

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*,
  576 U.S. 519 (2015)..............................................1, 2, 6, 7, 11, 13, 14

*Walsh v. TelTech Sys., Inc.*,
  821 F.3d 155 (1st Cir. 2016)............................................................20

*Woods v. Wells Fargo Bank, N.A.*,
  733 F.3d 349 (1st Cir. 2013)............................................................20

**Statutes**

42 U.S.C. § 3604(a) ...........................................................5, 6, 16, 17

42 U.S.C. § 3604(b) ....................................................3, 5, 6, 16, 22, 23

Mass. Gen. Laws ch. 151B, § 4(6)...................................................................3, 5, 6, 18, 22

Mass. Gen. Laws ch. 151B, § 4(10).......................................................................6, 18

Mass. Gen. Laws ch. 93A, § 3 ................................................................................19

**Regulations**

24 C.F.R. § 100.65.................................................................................................23

804 Mass. Code Regs. 2.04....................................................................................18

940 Mass. Code Regs. 3.16(3)................................................................................22

940 Mass. Code Regs. 3.16(4)................................................................................22

**Other Administrative Materials**

HUD Handbook 4350.3 § 4-7(F)(2) ............................................................1, 2, 7, 9, 19

**Other Authorities**

Restatement (Third) of Agency § 1.01 .....................................................................18

# INTRODUCTION

Plaintiffs invoke fair housing laws to attack a practice that federal regulators have approved as "one of the most common screening activities":  routine credit checks of prospective tenants, which "can help demonstrate whether the applicant has the ability to pay rent on time."  HUD Handbook 4350.3, at 4-23 § 4-7(F)(2).[1]  This practice is so common and well-accepted that Plaintiffs do not challenge its general use by housing providers.  Rather, they challenge only credit checks for lower-income applicants who receive federally funded housing vouchers.

Plaintiffs do not allege intentional discrimination.  Instead, they assert a disparate impact theory of liability.  When a closely-divided Supreme Court held that disparate impact claims are cognizable under the Fair Housing Act, it emphasized that "prompt resolution of these cases is important" and instructed courts to "examine with care whether a plaintiff has made out a prima facie case of disparate impact."  *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 543 (2015).  It also admonished courts to "avoid interpreting disparate impact liability to be so expansive as to inject racial considerations into every housing decision," and explained that policies "are not contrary to the disparate impact requirement unless they are 'artificial, arbitrary, and unnecessary barriers.'"  *Id.*

The Amended Complaint in this case does not survive review under these rigorous standards.  According to Plaintiffs, if a housing provider asks a third-party vendor such as Defendant SafeRent for assistance in screening prospective tenants, and if the vendor provides information about an applicant's credit history, the vendor engages in impermissible discrimination against Black and Hispanic applicants (in violation of federal and state fair housing

---

[1] A copy of HUD Handbook 4350.3, § 4-7 is attached as Exhibit A.  The full HUD Handbook is available at https://www.hud.gov/sites/documents/43503HSGH.PDF.

laws) and against recipients of public housing assistance (in violation of state law). But as Plaintiffs recognize in their Amended Complaint, the housing vouchers Plaintiffs received covered only a part of their rent, leaving Plaintiffs responsible for the remainder. The federal Department of Housing and Urban Development (HUD)—the agency responsible for administering the Fair Housing Act—has determined that screening a Section 8 rental applicant's credit history is "[p]ermitted," and "[o]wners may reject an applicant for a poor credit history." HUD Handbook 4350.3, at 4-23 § 4-7(F)(2).

As explained below, the Amended Complaint should be dismissed for multiple reasons.

*First*, Plaintiffs have failed to plead a *prima facie* case of disparate impact. The practice of conducting credit checks on recipients of public housing assistance has been approved by HUD and the courts, and Plaintiffs cannot show that this ubiquitous practice is the kind of "artificial, arbitrary, and unnecessary" policy that can give rise to disparate-impact liability. *Inclusive Communities,* 576 U.S. at 543. The Amended Complaint also fails to allege statistical evidence of a disparate impact on Black, Hispanic, or voucher-holding applicants, and fails to allege facts satisfying the "robust causality requirement" for disparate impact claims. *Id.* at 542. Moreover, accepting the Amended Complaint's disparate impact theory would require housing providers and SafeRent to consider race in precisely the "pervasive and explicit manner" that the Supreme Court has said is inappropriate. *Id.* at 543.

*Second*, Defendant SafeRent does not make housing decisions; housing providers do. Housing providers also decide whether and how they will use the information provided by SafeRent in making housing decisions. Consequently, SafeRent's third-party screening services fall outside the scope of the fair housing laws invoked in the Amended Complaint.

*Third*, Plaintiffs' Chapter 93A claims are nothing more than a repackaged version of their deficient fair housing claims.  The Chapter 93A claims fail because SafeRent did not violate any fair housing laws, and for the additional reason that the Amended Complaint fails to identify any unfair or deceptive conduct.

*Fourth*, the individual plaintiffs lack Article III standing to assert claims under 42 U.S.C. 3604(b) and Mass. Gen. Laws ch. 151B, § 4(6)(b) against SafeRent because they do not allege they have been injured by violations of those provisions, and the organizational plaintiff should be dismissed from this case because it lacks Article III standing to assert any claims.

## BACKGROUND

### A.     SafeRent Provides Tenant Screening Services To Housing Providers Responsible For Making Housing Decisions.

SafeRent is not a housing provider.  Instead, SafeRent is a third-party vendor that offers tenant screening services to housing providers that make decisions on rental applications.  Am. Compl. ¶¶ 19, 39–41, 43.  As an example, housing providers may ask SafeRent to generate a tenant screening report for each rental applicant.  *Id.* ¶ 24.

One of the services offered by SafeRent—the SafeRent Score—assigns rental applicants "a lease performance risk score."  *Id.* ¶¶ 24–25, 27.  The score is calculated "by aggregating several factors," including a rental applicant's "credit bureau data and scores, bankruptcy records, past due accounts, payment performance, and eviction history."  *Id.* ¶¶ 25, 35.

Housing providers that use SafeRent Scores do so "in different ways."  *Id.* ¶ 41.  Each housing provider establishes its own "minimum" acceptable scores for rental applicants, and may specify different conditions for acceptance of rental applicants whose scores fall below a certain threshold (*e.g.*, requiring "a higher security deposit").  *Id.* ¶¶ 39–40.  Housing providers may also choose "different minimum scores depending on the level of occupancy."  *Id.* ¶ 41.  SafeRent

- 3 -

returns a tenant screening report based on the parameters provided by the housing provider. *See id.* ¶ 42. When making housing decisions, housing providers may "choos[e] the highest scoring applicant for any vacancy" or "choos[e] the first to apply with an acceptable score." *Id.* ¶ 41.

### B.     Plaintiff Douglas's And Louis's Housing Applications.

Plaintiffs Monica Douglas and Mary Louis are Black women who allege that they receive federally funded housing choice vouchers paying for a portion, but not all, of their rent. *Id.* ¶¶ 13, 15. Both allege that they applied for housing, and that housing providers used SafeRent's screening services—including the SafeRent Score—to assist with their housing decisions. *Id.* ¶¶ 74–76, 83–85, 89. Neither Plaintiff alleges what their SafeRent Score was, or what thresholds the housing providers had set to determine the minimally acceptable SafeRent Score.

Plaintiff Douglas's rental application was accepted by Corcoran Management Company. *Id.* ¶ 89. Cocoran initially denied Plaintiff Douglas's application "based on unsatisfactory credit history as well as landlord tenant court record," *id.* ¶ 85, and Plaintiff Douglas then appealed that decision. *Id.* ¶¶ 83–85. Her efforts succeeded, and Corcoran "eventually did accept Ms. Douglas' rental application." *Id.* ¶ 89.

Plaintiff Louis's rental application was rejected by Defendant Metropolitan Management Group. *Id.* ¶ 76. When it denied her application, Metropolitan informed Plaintiff Louis that her "SafeRent tenancy score was lower than is permissible under *our* tenancy standards." *Id.* (emphasis added). Although Plaintiff Louis attempted to appeal the decision, Metropolitan told her that "we do not accept appeals and cannot override the outcome of the Tenant Screening." *Id.* ¶¶ 77–78. Plaintiff Louis secured housing elsewhere. *Id.* ¶ 79.

### C.     Plaintiffs' Lawsuit.

Nearly a year after they secured housing, Plaintiffs Douglas and Louis filed this lawsuit. Plaintiffs allege that using SafeRent Scores to evaluate housing voucher recipients has a

"disproportionate adverse impact" on "Black and Hispanic rental applicants" and "renters of all races who use housing vouchers," because of the "use of credit history" to calculate the scores. *Id.* ¶¶ 1, 2, 4–5, 122, 136, 152, 167, 176.  Plaintiffs claim that it is impermissible to consider credit history when making housing decisions for those who receive public housing assistance, even though Plaintiffs acknowledge that public housing assistance does not cover all of their monthly rent obligations. *Id.* ¶¶ 13, 15, 61–63.

The Amended Complaint does not allege that SafeRent makes any housing decisions. Plaintiffs nevertheless accuse SafeRent of violating Sections 3604(a) and (b) of the Fair Housing Act (FHA) (*id.* ¶¶ 120–26) (Count One), Section 4(6) of the Massachusetts General Laws Chapter 151B (*id.* ¶¶ 134–41) (Count Three), Section 4(10) of Chapter 151B (*id.* ¶¶ 150–57) (Count Five), and Chapter 93A (*id.* ¶¶ 165–83) (Counts Seven & Eight).[2]  Plaintiffs seek to assert these claims on behalf of putative classes of Black and Hispanic rental applicants who use publicly funded housing vouchers (Counts One, Three & Eight) and all rental applicants who use publicly funded housing vouchers (Counts Five & Seven) "and sought but were denied housing in Massachusetts because of their SafeRent Score at any property using Defendants' tenant screening services." *Id.* ¶¶ 104–08.

## PROCEDURAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible only when, after "perform[ing] a close reading of the complaint to distinguish factual allegations from conclusory legal statements," "the factual allegations present a reasonable inference that the

---

[2] Counts Two, Four, and Six are individual claims asserted by Plaintiff Louis against Metropolitan. Am. Compl. ¶¶ 127–33, 142–49, 158–64.

defendant is liable for the misconduct alleged." *Noone v. Carpenter*, 2022 WL 1462747, at *2 (D.

Mass. May 9, 2022) (Kelley, J.).

**ARGUMENT**

The Amended Complaint does not accuse SafeRent of intentional discrimination.  Instead,

all the claims against SafeRent are based on a disparate impact theory.  In such cases under the

Fair Housing Act, the Supreme Court has emphasized that "[c]ourts must . . . examine with care

whether a plaintiff has made out a prima facie case of disparate impact, and prompt resolution of

these cases is important."  *Inclusive Communities*, 576 U.S. at 543.  The Massachusetts claims

likewise are subject to "a rigorous examination on the merits at the pleading stage."  *Burbank*

*Apartments Tenant Ass'n v. Kargman*, 48 N.E.3d 394, 411 (Mass. 2016).  Plaintiffs' claims fail

this "rigorous examination" because they have not alleged a prima facie case of disparate impact

and because the laws at issue do not apply to SafeRent's conduct.

**I.      PLAINTIFFS HAVE NOT PLEADED A PRIMA FACIE CASE OF DISPARATE
         IMPACT UNDER ANY FAIR HOUSING LAW AT ISSUE.**

"In order to properly assert a disparate impact claim, plaintiff must plead (1) a specific and

actionable policy, (2) a disparate impact, and (3) facts raising a sufficient inference of causation."

*Barrow v. Barrow*, 2016 WL 6996996, at *5 (D. Mass. Nov. 29, 2016).  The Amended Complaint

fails to plead any of these elements under Plaintiffs' claims for violation of 42 U.S.C. § 3604(a)–

(b) and Mass. Gen. Laws ch. 151B, § 4(6)(b)—which prohibit discrimination on the basis of race—

and violation of Mass. Gen. Laws ch. 151B, § 4(10)—which prohibits discrimination on the basis

of any receipt of public housing assistance.

**A.      The Amended Complaint Fails To Plead A Race-Based Disparate Impact
          Claim.**

Plaintiffs' race-based disparate impact claims (Counts One & Three) assert that the use of

the SafeRent Score to evaluate housing voucher recipients has a disparate impact on Black and

- 6 -

Hispanic rental applicants.  *See, e.g.*, Am. Compl. ¶¶ 4, 122–24, 136–38.  The Amended Complaint fails to plead any of the elements of Plaintiffs' prima facie case.

**1.      Plaintiffs Fail To Identify An Arbitrary, Artificial, And Unnecessary Policy.**

"[P]rivate policies are not contrary to the disparate-impact requirement unless they are 'artificial, arbitrary, and unnecessary barriers.'"  *Inclusive Communities*, 576 U.S. at 543.  To state a claim for a violation of federal and Massachusetts fair housing laws, a plaintiff must therefore allege that the challenged policy is artificial, arbitrary, and unnecessary.  *See, e.g., Cobb Cty., Dekalb Cty., & Fulton Cty. v. Bank of Am. Corp.*, 183 F. Supp. 3d 1332, 1347 (N.D. Ga. 2016) ("[T]he Supreme Court has explicitly called for claimants to allege, and then eventually show, that a policy is artificial, arbitrary, and unnecessary."); *Burbank Apartments*, 48 N.E.3d at 410–11 (identifying the "artificial, arbitrary, and unnecessary" standard from *Inclusive Communities* as a "pleading requirement").  The Amended Complaint fails to meet this requirement.

Plaintiffs complain about a single element of the SafeRent Score:  the portion that accounts for a rental applicant's credit history.  *See* Am. Compl. ¶¶ 45, 50, 61.  There is no basis to conclude that consideration of credit history is arbitrary and unnecessary, and HUD has rejected that proposition.

Rather, HUD has determined that "[s]creening" Section 8 rental applicants "for credit history" is not only "[p]ermitted" but "can help demonstrate whether an applicant has the ability to pay rent on time."  HUD Handbook 4350.3, at 4-23 § 4-7(F)(2).[3]  As HUD has observed, "[e]xamining an applicant's credit history is one of the most common screening activities," and

---

[3] The Court may take judicial notice of the HUD Handbook, excerpts of which is attached as Exhibit A, because it is a matter of public record published on a government website.  *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 479 (1st Cir. 2013) (taking judicial notice of "publicly available HUD materials," including HUD handbooks).

"[o]wners may reject an applicant for a poor credit history." *Id.* at 4-23. It is not just owners that are permitted to consider an applicant's credit history: public housing authorities also may "use creditworthiness as a criterion in screening [Section 8] voucher applications to ensure suitability of tenancy." *Baldwin v. Hous. Auth. of City of Camden, NJ*, 278 F. Supp. 2d 365, 377 (D.N.J. 2003).

"It is significant that . . . HUD . . ., the agenc[y] responsible for administering the Section 8 program, consider[s] that landlords may take into account the creditworthiness of Section 8 applicants." *Pasquince v. Brighton Arms Apartments*, 876 A.2d 834, 840 (N.J. App. Div. 2005). For this reason, courts have long concluded that fair housing laws do not prohibit a housing provider from considering an applicant's credit history in making a housing decision. *E.g.*, *Karim-Panahi v. 4000 Massachusetts Apartments*, 302 F. Supp. 3d 330, 336 (D.D.C. 2018) (rejecting FHA claim because the housing providers "were permitted by Fair Housing regulations to check Plaintiff's credit history"), *aff'd*, 2018 WL 6167393 (D.C. Cir. Nov. 1, 2018); *Coley v. Brook Sharp Realty LLC*, 2015 WL 5854015, at *5 (S.D.N.Y. Sept. 25, 2015) (rejecting FHA claim because "[d]enial based on poor credit history is permitted under the [HUD] implementing regulations"); *Sutton v. Freedom Square Ltd.*, 2008 WL 4601372, at *4 (E.D. Mich. Oct. 15, 2008) ("[A]pplicable regulations permit a landlord to make inquiry into a prospective tenant[']s ability to meet the requirements of tenancy which includes screening for credit history."); *see also Bida v. Shuster Management LLC*, 2019 WL 1198960, at *4 (D.N.J. Mar. 14, 2019) ("Courts have recognized that background checks, including credit checks, may legitimately serve as a basis for denying a rental application.").

An applicant's credit history remains important even if housing vouchers pay a portion of a prospective tenant's monthly rent. Am. Compl. ¶ 65. That is because the prospective tenant is

"still responsible for the payment of some portion of the rent," and "it is logical and reasonable for a landlord to conclude that the applicant might avoid the rent obligation" if the applicant has a poor credit history. *Brighton Arms Apartments*, 876 A.2d at 841 (rejecting argument that it is arbitrary and capricious to consider a Section 8 rental applicant's credit history). The Amended Complaint itself acknowledges that Massachusetts voucher holders must personally "spend an average of $423 per month on rent plus utilities." Am. Compl. ¶ 31 n.8. And the financial hardship exemption for federal voucher recipients (Am. Compl. ¶ 68) does not protect a landlord when a tenant is not approved for, or fails to timely request, an exemption. *See, e.g.*, *Clarendon Hill Somerville, LP v. Biagioni*, 2014 Mass. App. Div. 181 (Mass. Dist. Ct. 2014) (housing authority not required to waive the minimum rent for a tenant who did not request an exemption).

Because the Amended Complaint contains "no factually supported allegations" that consideration of credit history—"one of the most common screening activities," HUD Handbook 4350.3, at 4-23 § 4-7(F)(2)—is arbitrary or unnecessary, Plaintiffs' claims must be dismissed. *See Ellis v. City of Minneapolis*, 860 F.3d 1106, 1112 (8th Cir. 2017) (affirming dismissal of FHA claim where "there are no factually supported allegations that [the challenged housing] provisions are arbitrary or unnecessary to health and safety"); *Hoyt v. City of St. Anthony Vill.*, 2019 WL 2212147, at *8 (D. Minn. May 22, 2019) (dismissing FHA claim for failure to allege facts showing policy was arbitrary and unnecessary); *City of Miami v. Bank of Am. Corp.*, 171 F. Supp. 3d 1314, 1320 (S.D. Fla. 2016) (same); *Cobb*, 183 F. Supp. 3d at 1346 (same).

## 2.  Plaintiffs Fail To Allege A Significant Statistical Disparity.

The Amended Complaint also does not allege facts demonstrating a disparate impact on Black and Hispanic rental applicants. "A showing of disparate impact is usually made using statistical evidence," *Barrow*, 2016 WL 6996996, at *5, and the "statistical disparity" must be "significant," *Luceus v. Rhode Island*, 923 F.3d 255, 257 (1st Cir. 2019). *See also Burbank*

*Apartments*, 48 N.E.3d at 412 (*Inclusive Communities* requires pleading "a disproportionately negative statistical discrepancy").

Here, the Amended Complaint contains no comparison of housing outcomes for Black and Hispanic voucher holders and other voucher holders, and it should be dismissed on this basis alone. *See, e.g.*, *Binns v. City of Marietta Ga., (Hous. Choice Voucher Program)*, 704 F. App'x 797, 802 (11th Cir. 2017) (affirming dismissal of FHA disparate impact claim because the plaintiff "provided no comparative data, statistical or otherwise, to show that elderly and disabled participants are disproportionately impacted by the City's policy"); *Barrow*, 2016 WL 6996996, at *5 (dismissing FHA claim where the plaintiff failed to allege any statistical evidence); *Shuster Mgmt. LLC*, 2019 WL 1198960, at *5 (same); *Raso v. Lago*, 958 F. Supp. 686, 704 (D. Mass. 1997) (same); *Merritt v. Countrywide Fin. Corp.*, 2015 WL 5542992, at *18 (N.D. Cal. Sept. 17, 2015) (dismissing FHA claim where the plaintiff failed to allege any statistical evidence representative of subgroups at issue); *see also Mandala v. NTT Data, Inc.*, 975 F.3d 202, 211 (2d Cir. 2020) (affirming dismissal of Title VII disparate-impact claim where the plaintiff failed to allege any statistical evidence representative of subgroups at issue); *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) (affirming dismissal of Title VII disparate-impact claim where the plaintiffs failed to allege any statistical evidence).

The statistical evidence the Amended Complaint does cite is inadequate for two reasons. *First*, Plaintiffs ask this Court to infer a statistical disparity in housing outcomes based on alleged racial disparities in credit history.  *See* Am. Compl. ¶¶ 50–57.  However, credit history is just one element of the formula used to calculate a SafeRent Score.  *Id.* ¶ 35.  Where, as here, a theory of disparate impact is premised on the use of a formula, the relevant question is "whether the formula *as a whole* had a disparate impact," not whether a particular element of that formula had a disparate

impact. *Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, 639 F.3d 1078, 1086 (D.C. Cir. 2011) (emphasis added) (rejecting challenge under FHA to one element of HUD's formula for awarding hurricane relief grants). Plaintiffs' granular focus on a single element of the formula establishes nothing, because any impact may "potentially [be] offset by other elements of the formula" (*id.*), such as "data on rental payments" or "eviction history." Am. Compl. ¶¶ 30, 48.

*Second*, the allegations do not address disparities in credit history for Black and Hispanic rental applicants who hold housing vouchers and other applicants who hold housing vouchers. There are no allegations explaining why general statistics about the Black and Hispanic population can plausibly be extrapolated to Black and Hispanic voucher holders. At the pleading stage, "the statistics must at least be able to support the plaintiff's claim without resorting to [such] a statistical fallacy." *Mandala*, 975 F.3d at 212 (affirming dismissal of complaint where plaintiff failed to plausibly explain why national statistics are representative of relevant subgroup).

### 3. Plaintiffs Fail To Satisfy The "Robust Causality Requirement."

Plaintiffs also fail to meet the "robust causality requirement" necessary to plead a disparate impact, which "protects defendants from being held liable for racial disparities they did not create." *Inclusive Communities*, 576 U.S. at 542. To satisfy this requirement, a plaintiff must plausibly allege that "the challenged policy, and not some other factor or policy, caused the disproportionate effect." *Southwest Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 962 (9th Cir. 2021). "If a statistical discrepancy is caused by factors other than the defendant's policy, a plaintiff cannot establish a prima facie case, and there is no liability." *Inclusive Communities*, 576 U.S. at 542. The Supreme Court has cautioned that it "may be difficult to establish causation" where "multiple factors" contribute to the decision at issue. *Id.* at 543.

In this case, the Amended Complaint is devoid of factual allegations supporting an inference that including credit history in the SafeRent Score, and not some other factor, caused any disparity in housing outcomes. As the Amended Complaint acknowledges, an applicant's credit history is just one of several factors that make up a SafeRent Score. Am. Compl. ¶ 30. Plaintiffs do not allege that their credit history, as opposed to some other factor, was the reason why their housing applications were initially denied. Indeed, Plaintiff Douglas had an eviction history (*id.* ¶ 16), which could have caused the landlord to (initially) deny her application without any consideration of her SafeRent Score or credit history.

The Amended Complaint also acknowledges that housing providers—not SafeRent—make housing decisions. Am. Compl. ¶¶ 37, 39–41, 89. As Plaintiffs acknowledge, housing providers (i) select the "minimum" acceptable scores for rental applicants, *id.* ¶ 39, (ii) choose whether to adopt "different minimum scores depending on the level of occupancy," *id.* ¶ 41, and (iii) decide, when receiving multiple applications for a vacancy, whether to offer housing to "the highest scoring applicant for any vacancy" or "the first to apply with an acceptable score," *id.* Housing providers also choose whether to make exceptions to the minimum score requirements. The housing provider's role as decision maker is shown by the experience of Plaintiff Douglas, who was accepted by Corcoran even though she allegedly received a SafeRent Score below the minimum score set by Corcoran. *Id.* ¶ 89. The fact that housing providers—not SafeRent—decide which applications will be approved or denied is fatal to Plaintiffs' claims. *See Inclusive Communities Project, Inc. v. U.S. Dep't of Treasury*, 2016 WL 6397643, at *12 (N.D. Tex. Oct. 28, 2016) (dismissing FHA claim for failure to allege robust causation where "local agencies— not OCC [*i.e.*, the defendant]—decide which affordable housing developments will be awarded [the housing tax credits at issue]").

Plaintiffs' conclusory allegation that the alleged disparate impact was a "direct result" of SafeRent's conduct (Am. Compl. ¶¶ 122, 136) is a "legal conclusion couched as a factual allegation" that is insufficient to defeat a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Courts do not permit disparate impact claims to proceed when, as here, it is "entirely speculative" whether the defendant's policy, as opposed to some other factor, caused the statistical disparity. *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 907 (5th Cir. 2019); *see also Baker v. City of San Diego*, 2022 WL 484973, at *4 (S.D. Cal. Feb. 16, 2022) (dismissing FHA claim for failure to allege that the defendants' "identified policies, and not some other factor . . . created the disparate effect"). This Court should do the same.

### 4. Plaintiffs Impermissibly Seek To Expand Disparate Impact Liability To Require Pervasive Collection And Consideration Of Information About Housing Applicants' Race.

Plaintiffs' claims would require housing providers and SafeRent to collect information about the race of applicants, and to consider it in precisely the "pervasive and explicit manner" that the Supreme Court has said is inappropriate in the housing context. *Inclusive Communities*, 576 U.S. at 543.

For good reason, the Amended Complaint does not allege that SafeRent or housing providers know the race of screened applicants. Because "there is simply no legitimate reason for considering an applicant's race" in connection with a housing decision, courts have held that a housing provider violates the FHA by asking a prospective tenant to state her race. *Jancik v. Dep't of Hous. & Urb. Dev.*, 44 F.3d 553, 557 (7th Cir. 1995); *see also, e.g.*, *Hous. Rts. Ctr. v. Donald Sterling Corp.*, 274 F. Supp. 2d 1129, 1141 (C.D. Cal. 2003) (plaintiffs established likely success of claim that "asking a tenant to state his or her national origin" violates FHA), *aff'd sub nom. Hous. Rts. Ctr. v. Sterling*, 84 F. App'x 801 (9th Cir. 2003). Yet that is exactly what Plaintiffs ask this Court to require of housing providers and their service providers: they even seek, for example,

an order requiring SafeRent to "[m]onitor tenant screening outcome data to prevent discrimination against Black and Hispanic applicants." Am. Compl. ¶ 186.

The Amended Complaint should be dismissed because Plaintiffs seek exactly the over-expansion of disparate impact liability that the Supreme Court warned against: "inject[ing] racial considerations into every housing decision." *Inclusive Communities*, 576 U.S. at 543. Such an overly expansive interpretation, the Supreme Court explained, would create "a danger that potential defendants" will "adopt racial quotas," "raise serious constitutional concerns," and contravene the fair housing laws' "central purpose" to "eradicate discriminatory practices" within the housing sector. *Id.* at 539. This Court "should avoid interpreting disparate-impact liability to be so expansive," which the Supreme Court warned is likely "to perpetuate race-based considerations rather than move beyond them." *Id.* at 543.

## B.     The Amended Complaint Fails To Plead A Voucher-Based Disparate Impact Claim.

The voucher-based disparate impact claim (Count Five) suffers from the same defects as the race-based claims. Plaintiffs assert that considering applicants' credit histories in SafeRent Scores has a disparate impact on rental applicants who hold housing vouchers. Am. Compl. ¶ 152. For the reasons discussed above (*supra* at pp. 7–9, 11–13), Plaintiffs fail to plead the arbitrariness and robust causation elements of their *prima facie* case.

The allegations of a statistical disparity between applicants who hold housing vouchers and those who do not are even weaker than Plaintiffs' race-based theory. Plaintiffs allege no facts demonstrating that rental applicants who hold housing vouchers (the protected group) have worse outcomes than similarly situated rental applicants who do not hold such vouchers (the unprotected group). The Amended Complaint's conclusory allegation of "a disproportionate adverse impact on rental applicants who hold housing vouchers," Am. Compl. ¶ 152, is insufficient. *See Mian v.*

*LoanCare Servicing Co.*, 2022 WL 1289662, at *5 (D. Md. Apr. 29, 2022) (no disparate impact where the plaintiff alleged "only conclusory assertions of discrimination" and "no specific factual allegations regarding [those] outside of the protected class").

It is not sufficient to allege that "many" individuals with lower incomes have lower credit scores than those with higher incomes.  Am. Compl. ¶¶ 59–61.  Plaintiffs fail to explain why general statistics about the low-income population can plausibly be extrapolated to voucher recipients.  *Mandala*, 975 F.3d at 212 (no disparate impact where plaintiff relied on similar statistical fallacy).  Indeed, because public housing authorities may deny voucher applicants based on poor credit history, *see Baldwin*, 278 F. Supp. 2d at 377, approved voucher applicants may have *higher* credit scores as compared to the low-income population generally.  Moreover, as discussed above (*supra* at pp. 10–11), credit history is just one element of a SafeRent Score, and Plaintiffs' burden is to demonstrate that use of the SafeRent Score "as a whole" has a disparate impact.  *Greater New Orleans*, 639 F.3d at 1086.  Plaintiffs have not done so.

## II.    THE FAIR HOUSING LAWS DO NOT APPLY TO SAFERENT, WHICH DOES NOT MAKE HOUSING DECISIONS.

Even if Plaintiffs had pleaded a prima facie disparate impact claim—and they did not— their claims against SafeRent should be dismissed for the independent reason that the fair housing laws at issue do not apply to SafeRent.

### A.    The Fair Housing Act Does Not Apply To Third-Party Tenant Screening Services.

The FHA provisions invoked in Count One do not apply to companies like SafeRent that are not landlords and do not make housing decisions, but only offer services to assist those that do make housing decisions.

Section 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny,

a dwelling to any person because of [protected characteristics]."  42 U.S.C. § 3604(a).  The Amended Complaint does not allege that SafeRent sells, rents, or negotiates the sale or rental of housing.[4]

Instead, Plaintiffs contend that SafeRent "mak[es]" housing "unavailable" to persons "solely based upon their numerical SafeRent Score."  Am. Compl. ¶¶ 122, 126(a).  That assertion is contradicted by Plaintiffs' recognition elsewhere in the Amended Complaint that housing providers, not SafeRent, are responsible for making housing decisions.  As the Amended Complaint acknowledges, housing providers decide whether and how they will use the SafeRent Scores.  *See id.* ¶¶ 39–41.

Both Plaintiffs' experiences confirm that housing providers, not SafeRent, are responsible for making housing decisions.  When Plaintiff Louis was informed that her application was denied, the housing provider told her that the SafeRent score "was lower than is permissible under *our* tenancy standards," not under any standards established by SafeRent.  *Id.* ¶ 76 (emphasis added).  And Plaintiff Douglas's housing application was ultimately accepted by the housing provider, even though she allegedly received a SafeRent Score below the minimum score set by the provider.  *Id.* ¶ 89.

Consistent with the statutory text, courts have dismissed claims brought under this provision against defendants with no authority to make housing decisions, because "[e]ven the most expansive interpretations of section 3604(a) do not extend coverage beyond entities that directly provide housing or those that are integrally involved in the sale or financing of real estate."

---

[4] The Amended Complaint also accuses SafeRent of violating 42 U.S.C. § 3604(b).  As explained below, Plaintiffs lack standing to assert a claim for a violation of that section.  *See infra* at pp. 22–23.  Even if they had standing, Section 3604(b) does not apply to the SafeRent conduct at issue here.

*Steptoe v. Beverly Area Planning Assoc.*, 674 F. Supp. 1313 (N.D. Ill. 1987) (dismissing claim against housing information service).  For example, the plaintiffs in *Hoostein v. Mental Health Ass'n (MHA),* asserted that a city overseeing a rental subsidy program and a nonprofit administering the program violated Section 3604(a) when the nonprofit revoked a rental subsidy provided to the plaintiffs' daughter.  98 F. Supp. 3d 293, 295–97 (D. Mass. 2015).  Another judge in this Court held that Section 3604(a) applied only to "a potential landlord or property owner," and it dismissed the plaintiffs' claims with prejudice because "no Defendants qualify as individuals whose actions are controlled by the [FHA] provisions, as Defendants are not landlords or potential home-sellers."  *Id.* at 297, *aff'd*, No. 15-1502 (1st. Cir. Dec. 14, 2015).  The same reasoning applies here.  SafeRent is not a landlord and does not otherwise have authority to make housing decisions.  This Court should therefore dismiss the FHA claims against SafeRent.

The single case in which a court has permitted claims against a tenant screening company to survive a motion to dismiss did so in circumstances different from those here.  In *Connecticut Fair Hous. Ctr. v. Corelogic Rental Prop. Sols.*, the plaintiff challenged the screening company's use of criminal background checks to make housing decisions—a practice that HUD had said had a disparate impact on certain racial minorities.  369 F. Supp. 3d 362, 372 (D. Conn. 2019).  The district court held the screening company could be liable for two primary reasons:  the screening company "knew of and had the power to correct and end a discriminatory housing practice," *id.* at 372, and because it was the housing provider's agent, *id.* at 372–74.  Here, by contrast, the Amended Complaint does not—and cannot—allege that SafeRent knew that the SafeRent Scores were discriminatory or that SafeRent is the agent of Plaintiffs' housing providers.

**B.    The Massachusetts Laws Do Not Apply For Additional Reasons.**

Sections 4(6)(b) and Section 4(10) similarly do not apply to SafeRent or its services.  As compared to the FHA, Sections 4(6)(b) and 4(10) are more restrictive in that they "list a series of

private actors . . . to whom those provisions apply." *Crossing Over, Inc. v. City of Fitchburg*, 161 N.E.3d 432, 443 n.17 (Mass. App. Ct. 2020) (analyzing Section 4(6)).  SafeRent is not among the listed private actors in those sections.

The Amended Complaint mistakenly suggests that Section 4(6) applies to SafeRent because it is an "assignee" of a housing accommodation or an "agent" of a person "having the right of ownership or possession or right to rent or lease" such accommodation.  Mass. Gen. Laws ch. 151B, § 4(6)(b); Am. Compl. ¶ 141 (alleging that SafeRent qualifies as assignee and agent).  There are no factual allegations that SafeRent is an assignee of the apartments that Plaintiffs applied to rent.  Nor are there any factual allegations establishing that SafeRent acted as an agent of any housing provider.  "[I]f a service provider simply furnishes advice and does not interact with third parties as the representative of the recipient of the advice, the service provider is not acting as an agent"—but that is all Plaintiffs allege SafeRent did here.  Restatement (Third) of Agency § 1.01 cmt. c.

Section 4(10) likewise does not apply to SafeRent.  That section's prohibition against discriminating against recipients of public housing assistance applies only to "any person furnishing credit, services or rental accommodations."  The agency responsible for administering this statute—the Massachusetts Commission Against Discrimination (MCAD)—has interpreted it to prohibit discrimination "in the furnishing of credit services, or in the renting of accommodations against an individual who is a recipient of federal, state or local assistance."  804 Mass. Code Regs. 2.04; *see Coll.-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination*, 508 N.E.2d 587, 593 (Mass. 1987) (deferring to MCAD's interpretation of Chapter 151B at issue in the appeal).  SafeRent does not furnish credit services (such as mortgage or lending services) or rent accommodations; thus, Section 4(10) does not apply.

- 18 -

### III.   PLAINTIFFS' DERIVATIVE CHAPTER 93A CLAIMS FAIL AS WELL.

Plaintiffs also accuse SafeRent of committing unfair and deceptive conduct in violation of Chapter 93A.  Am. Compl. ¶¶ 165–83.  The Chapter 93A claims are just a repackaged version of Plaintiffs' deficient fair housing claims, down to their attempt to predicate liability on an alleged "disparate impact."  Am. Compl.  ¶¶ 167–172, 176–81.  Chapter 93A claims that are "wholly derivative" of other insufficiently pleaded claims should be dismissed for the same reasons. *Gelineau v. Bank of New York Mellon as Tr. for Certificateholders of CWABS 2004-5*, 2019 WL 233513, at *2 (D. Mass. Jan. 16, 2019) (dismissing Chapter 93A claim premised on same allegations as another insufficiently pleaded claim).  There are also three other independent reasons why the Chapter 93A claims should be dismissed.

*First*, the challenged conduct falls squarely within Chapter 93A's safe harbor provision, which expressly exempts from liability "actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States."  Mass. Gen. Laws ch. 93A, § 3.  This safe harbor exemption applies when, as here, a statutory scheme "affirmatively permits the practice which is alleged to be unfair or deceptive." *Cablevision of Bos., Inc. v. Pub. Imp. Comm'n of City of Bos.*, 38 F. Supp. 2d 46, 61 (D. Mass.), *aff'd sub nom. Cablevision of Bos., Inc. v. Pub. Improvement Comm'n of City of Bos.*, 184 F.3d 88 (1st Cir. 1999).  HUD, which is responsible for administering the FHA, has affirmatively stated that "[s]creening" Section 8 rental applicants "for credit history" is "[p]ermitted," and "[o]wners may reject an applicant for a poor credit history."  HUD Handbook 4350.3, at 4-23 § 4-7(F)(2) (Nov. 2013).  Accordingly, the safe harbor exemption applies.  *See, e.g.*, *Dorrian v. LVNV Funding*, *LLC*, 2017 WL 2218773, at *13–14 (Mass. Super. Mar. 30, 2017) (no Chapter 93A liability when regulator, "by its advisory opinions, affirmatively permitted [the defendant] (or entities like it) to conduct its business without a license, which is the precise conduct that is alleged

to be a violation of Chapter 93A"), *rev'd on other grounds*, 94 N.E.3d 370 (Mass. 2018); *Rogers v. Comcast Corp.*, 55 F. Supp. 3d 711, 719–22 (E.D. Pa. 2014) (no Chapter 93A liability where allegations premised on conduct approved by regulator).

*Second*, the absence of any allegations that SafeRent engaged in any intentional discrimination precludes Plaintiffs from proceeding on an "unfair" practices theory.  To rise to the level of an "unfair" practice under Chapter 93A, a defendant's conduct "must generally be of an egregious, non-negligent nature."  *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016). Here, however, Plaintiffs allege that the SafeRent Scores are "unfair" because they purportedly had a "disparate impact" on Black and Hispanic voucher holders.  Am. Compl. ¶¶ 167–71, 176–80.  The problem for Plaintiffs is that "[a] disparate impact claim involves <u>unintentional</u> discrimination," *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 271 n.6 (1st Cir. 2022) (underlining in original), including when it results from "good faith" conduct, *E.E.O.C. v. Steamship Clerks Union, Loc. 1066*, 48 F.3d 594, 602 (1st Cir. 1995).  And there are no allegations that SafeRent engaged in anything other than good-faith conduct, let alone "egregious, non-negligent" conduct. *Walsh*, 821 F.3d at 160.

Because Plaintiffs allege nothing more than good-faith or (at most) negligent conduct, this Court should follow the long line of authority rejecting Chapter 93A unfairness claims premised on such conduct.  *See, e.g.*, *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013) (no unfairness where plaintiff failed to allege "something beyond a mere good faith dispute"); *Kozaryn v. Ocwen Loan Servicing, LLC*, 784 F. Supp. 2d 100, 103 (D. Mass. 2011) (no unfairness where plaintiff failed to allege "factual detail demonstrating unfairness, as opposed to clerical error or mere negligence"); *Spence v. Berkshire Life Ins. Co.*, 561 F. Supp. 2d 126, 130 (D. Mass. 2008) (no unfairness because Chapter 93A "does not apply" to "a good faith dispute"); *Darviris v. Petros*,

812 N.E.2d 1188, 1192 (Mass. 2004) (no unfairness based on "mere negligence"); *Duclersaint v. Fed. Nat. Mortg. Ass'n*, 696 N.E.2d 536, 540 (Mass. 1998) (no unfairness based on "a good faith dispute," which "is not the stuff of which a [Chapter 93A] claim is made").

*Third*, Plaintiffs fail to allege that SafeRent engaged in any deceptive conduct. Chapter 93A claims of deception must satisfy "[t]he heightened pleading requirement of Rule 9(b)." *Fitzgerald v. Polar Corp.*, 2020 WL 6586628, at *3 (D. Mass. Nov. 10, 2020) (dismissing Chapter 93A deception claim for failure to satisfy Rule 9(b)). Plaintiffs' only apparent deception theory is that SafeRent allegedly generates reports that "unfairly characterize" them as "unfit tenants." Am. Compl. ¶ 182. Yet Plaintiffs do not—and cannot—identify where SafeRent allegedly made such a statement. Plaintiffs thus fail to satisfy the most basic requirements of Rule 9(b): alleging "what fraudulent misrepresentations were made," *Beram v. Ceaco, Inc.*, 219 F. Supp. 3d 274, 282 (D. Mass. 2016) (dismissing fraud claim "only pleaded in a conclusory way"), and "why the statements were false and misleading," *Driscoll v. Landmark Bank for Sav.*, 758 F. Supp. 48, 52–53 (D. Mass. 1991) (dismissing fraud claim "because it does not provide any basis why the statements are fraudulent").

To the extent that Plaintiffs contend that providing a SafeRent Score on a tenant screening report "effectively tells the housing providers that certain applicants would not be good tenants," Am. Compl. ¶ 42, Plaintiffs ignore that the housing providers, not SafeRent, are responsible for setting the criteria to determine whether a particular individual is an appropriate tenant. As Plaintiffs acknowledge, housing providers are responsible for setting the minimum acceptable scores for rental applicants, *id.* ¶¶ 39–41, and whether to make exceptions to the minimum score requirements, *id.* ¶ 89.

*Finally*, Plaintiffs cannot avoid the requirement to plead an unfair or deceptive act by alleging violations of the fair housing laws.  They rely on regulations providing that violations of certain state "statutes, rules, regulations or laws" and "Federal consumer protection statutes" are *per se* Chapter 93A violations.  940 Mass. Code Regs. 3.16(3)–(4); *see* Am. Compl. ¶¶ 172, 181 (quoting without citing the same regulations).  As noted above, Plaintiffs have failed to plead such a violation.  But even if they had, the First Circuit has held that a plaintiff relying on violations of other laws to bring suit under Chapter 93A is still "bound by the strictures of Chapter 93A, including the requirements of showing unfair and deceptive conduct occurring in trade or commerce."  *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 117, 121 (1st Cir. 2014).  As discussed above, Plaintiffs fail to plead these requirements.

## IV.   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS FOR VIOLATIONS OF SECTION 3604(B) OR SECTION 4(6)(B).

In addition to the reasons stated above, Plaintiffs' claims for violations of 42 U.S.C. § 3604(b) and Section 4(6)(B) fail because Plaintiffs lack Article III standing to bring such claims. These sections prohibit discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith."  42 U.S.C. § 3604(b); *see also* Mass. Gen. Laws ch. 151B, § 4(6)(B) (prohibiting discrimination "in the terms, conditions or privileges of such accommodations or the acquisitions thereof, or in the furnishings of facilities and services in connection therewith").

Plaintiffs accuse SafeRent of violating these provisions because it allegedly "provide[d] different terms and conditions and discriminat[ed] in the provision of services," Am. Compl. ¶ 126(b), but Plaintiffs fail to allege that they personally have been injured by a violation of these provisions.  Plaintiff Louis cannot make out such a claim:  she was never approved for housing, and so could not have received less favorable "terms and conditions" or "services."  *See* 24 C.F.R.

§ 100.65 (identifying conduct prohibited by Section 3604(b)); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 193 (4th Cir. 1999) (services provision covers "garbage collection and other services of the kind"). And although Plaintiff Douglas's application was approved, she never alleges that she was offered less favorable terms or received less favorable services as compared to non-Black or non-voucher renters.

It is well settled that "a plaintiff must demonstrate standing for each claim he seeks to press." *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). And class-action plaintiffs "must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Plaintiffs' failure to allege that they personally experienced a violation of Section 3604(b) or Section 4(b)(6) therefore deprives them of Article III standing to sue SafeRent to enforce those provisions. Alternatively, and for the same reasons, Plaintiffs fail to state a claim for violation of these provisions.

## V.   COMMUNITY ACTION AGENCY OF SOMERVILLE LACKS STANDING.

Plaintiff Community Action Agency of Somerville (CAAS) lacks Article III standing to sue SafeRent. CAAS does not allege that it or its members have been deprived of housing due to SafeRent's practices. Nor does CAAS seek to serve as a class representative. Instead, CAAS asserts organizational standing, Am. Compl. ¶ 8, which requires "the same showing as is required in the case of an individual: injury, causation and redressability." *Equal Means Equal v. Ferriero*, 3 F.4th 24, 28 (1st Cir. 2021). When analyzing a facial challenge to a party's standing to sue, like the one SafeRent makes here, "[t]he analysis is essentially the same as a Rule 12(b)(6) analysis," *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Authority*, 4 F.4th 63, 69 (1st Cir. 2021), which means a plaintiff "must set forth reasonably definite factual allegations, either direct or

inferential, regarding each material element needed to sustain standing," *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016).

CAAS has not done so here. CAAS does not allege that it worked with Plaintiffs Louis or Douglas, or with any other individual who applied for housing from Metropolitan or Corcoran. Although CAAS alleges that it worked with "29 tenants with vouchers" to secure housing "in the last year," Am. Compl. ¶¶ 17–18, it does not allege that it worked with a single applicant whose application was screened by SafeRent—much less any applicant whose application was denied because of their SafeRent Score.

Although CAAS claims that it is unable "to encourage their clients to apply to housing providers who use SafeRent's tenant screening services," *id.* ¶ 99, these allegations are insufficient to establish standing for two reasons. First, CAAS's conclusory allegations of "diverted" resources and a "frustrated" mission (*id.* ¶¶ 101–02) are insufficient, because CAAS does not allege that it actually steered any of its clients away from a housing provider that used SafeRent Scores. *See Equal Means Equal*, 3 F.4th at 30 (allegations of "frustration of mission and diversion of resources" not sufficient to establish organizational standing); *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 259 (S.D.N.Y. 2018) (no organizational standing based on conclusory allegation of "diversion of its resources" and "frustration of its mission"). Second, the vague allegation that CAAS has been "t[old]" by unidentified leasing agents that only applicants with a "clean" or "good" credit history can pass screening, Am. Compl. ¶ 97, is too indefinite to show that applicants that were never screened by SafeRent would have been denied if they were submitted and screened.

## CONCLUSION

This Court should dismiss the Amended Complaint with prejudice.

Dated:  October 27, 2022                    Respectfully Submitted:


                                            /s/ *Jeffrey Huberman*
                                            JEFFREY HUBERMAN (BBO# 696437)
                                            jhuberman@cov.com
                                            ANDREW SOUKUP (*pro hac vice*)
                                            asoukup@cov.com
                                            ROBERT A. LONG (*pro hac vice*)
                                            rlong@cov.com
                                            COVINGTON & BURLING LLP
                                            One CityCenter
                                            850 Tenth Street, NW
                                            Washington, DC 20001
                                            Telephone: (202) 662-6000

                                            *Attorneys for Defendant*
                                            *SafeRent Solutions, LLC*



## CERTIFICATE OF SERVICE

        I hereby certify that on October 27, 2022, the foregoing document was electronically
filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the
registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local
Rule 5.4(c).

                                            /s/ *Jeffrey Huberman*
                                            Jeffrey Huberman