# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MARY LOUIS and MONICA DOUGLAS, on )
behalf of themselves and similarly situated persons, )
and COMMUNITY ACTION AGENCY OF )
SOMERVILLE, INC, )
)
                Plaintiffs, )
)
        v. )       Case No. 22cv10800-AK
)
SAFERENT SOLUTIONS, LLC, and )
METROPOLITAN MANAGEMENT GROUP, )
LLC, )
)
                Defendants. )
_____ )

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States respectfully submits this Statement of Interest under 28 U.S.C. § 517[1]

to assist the Court in evaluating the application of the Fair Housing Act (FHA), 42 U.S.C. § 3601

*et seq.*, in challenges to an algorithm-based tenant screening system. The United States has a

strong interest in ensuring the correct interpretation and application of the FHA's pleading

standard for disparate impact claims, including where the use of algorithms may perpetuate

housing discrimination.

The United States Department of Justice and the United States Department of Housing

and Urban Development (HUD) share enforcement authority under the FHA. *See* 42 U.S.C.

§§ 3610; 3612(a), (b), (o); 3613(e); 3614. Both the Department of Justice's and HUD's

---

[1] Under 28 U.S.C. § 517 "[t]he Solicitor General, or any officer of the Department of Justice,
may be sent by the Attorney General to any State or district in the United States to attend to the
interests of the United States in a suit pending in a court of the United States, or in a court of a
State, or to attend to any other interest of the United States."

enforcement authority includes addressing discriminatory policies or practices related to housing, including rental housing, that have an unjustified disparate impact on certain protected classes. HUD has regulations implementing the FHA's prohibition of disparate impact discrimination and the Department of Justice has for decades brought disparate impact claims in FHA cases.[2]

## I.    Background

On May 25, 2022, Plaintiffs Mary Louis, Monica Douglas, and Community Action Agency of Somerville, Inc. (CAAS) filed a Complaint alleging claims under the FHA and Massachusetts General Laws c. 151B, § 4(6) and § 4(10). Compl., ECF No. 1. On August 26, 2022, Plaintiffs filed an Amended Complaint. Am. Compl., ECF No. 15.

Individual Plaintiffs Louis and Douglas, both Black women, are rental applicants who use federally funded housing choice vouchers (vouchers) to pay part of their rent.[3] Am. Compl. ¶¶ 1, 7, 13, 15. They allege they were denied housing due to their SafeRent Scores, an algorithm-based "lease performance risk score," as further described below. *Id.* ¶¶ 7, 14, 16, 25, 28. They bring their claims against SafeRent on behalf of themselves and a class of all other similarly situated Black or Hispanic individuals who pay some or all of their monthly rent through vouchers and have had their rental applications denied based on their SafeRent Score. *Id.* ¶ 7.

---

[2] 24 C.F.R. 100.500 (2013); *see*, *e.g.*, Order, *United States* v. *Housing Auth. of Ashland, Ala.*, No. 1:20-CV-01905, (N.D. Ala. May 12, 2021); Complaint, *United States* v. *City of Beaumont*, No. 15-CV-00201 (E.D. Tex. May 26, 20 15); Complaint, *United States* v. *Town of Oyster Bay*, No. 14-CV-02317 (E.D.N.Y. Apr. 10, 2014). *See also* U.S. Amicus Br., *Texas Dep't of Hous. & Cmty. Affairs* v. *Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) (No. 13-1371).

[3] The housing choice voucher program is the federal government's program for assisting low-income families and others to afford decent, safe, and sanitary housing in the private market. *See* Housing Choice Vouchers Fact Sheet, *available at* https://perma.cc/7REL-2Y4N. These vouchers are also referred to as "Section 8 vouchers," referencing the section in the U.S. Housing Act of 1937 that establishes the housing choice voucher program. *See* 42 U.S.C. §§ 1401-1440.

Plaintiff CAAS is a non-profit organization that works directly with voucher holders and helps them locate, apply for, and secure housing where they can use their vouchers. *Id.* ¶¶ 8, 17-18.

Defendant SafeRent Solutions, LLC (SafeRent), formerly known as CoreLogic Rental Property Solutions, LLC, provides a variety of tenant screening services, including SafeRent Score reports. *Id.* ¶¶ 1, 19. A SafeRent Score is an algorithm-based "lease performance risk" score that SafeRent markets to housing providers as capable of selecting "better renters." *Id.* ¶¶ 28-29. A SafeRent Score uses an algorithm that considers rental applicants' credit history, other credit-related information, including non-tenancy debts, and eviction history in calculating a score. *Id.* ¶ 30. Defendant Metropolitan Management Group, LLC (Metropolitan) is a housing provider with a principal place of business in Boston, Massachusetts. *Id.* ¶ 20. Metropolitan uses SafeRent Scores to screen, and decide whether to approve or deny, rental applications to voucher holders such as Plaintiff Louis. *Id.*

Relevant to this Statement, the Amended Complaint alleges that Defendants SafeRent and Metropolitan (Defendants) discriminate against Black and Hispanic rental applicants, in violation of the FHA, by assigning them disproportionately lower SafeRent Scores as compared to white rental applicants. *Id.* ¶ 2. Plaintiffs allege that the lower SafeRent Scores result in disparate impact on Black and Hispanic applicants for two reasons. First, the algorithm-based scoring system relies on a variety of factors, including credit history and non-tenancy debt, that are not relevant to whether a rental applicant will pay rent. *Id.* ¶ 30. Second, the algorithm-based scoring system fails to consider one highly relevant factor, the use of housing vouchers, to evaluate whether a rental applicant will pay rent. *Id.* ¶ 31. As alleged in the Amended Complaint, Black and Hispanic rental applicants, as compared to white rental applicants, are more likely to have lower credit scores and more likely to use housing vouchers to pay rent. *Id.* ¶¶ 45-61.

II.     **Argument**

This Statement provides an overview of the FHA and addresses two questions of law raised in Defendants SafeRent Solutions, LLC and Metropolitan Management Group, LLC's Motions to Dismiss.[4] First, this Statement outlines the proper pleading standard for a claim of disparate impact under the FHA and explains how Defendants misstate that standard. Second, the Statement refutes SafeRent's argument that the FHA does not apply to tenant screening companies by explaining that the FHA's language and caselaw both make clear that the activities of such companies fall squarely within the statute's reach.[5]

A.     **Statutory and Regulatory Framework of the Fair Housing Act**

The FHA makes it unlawful to "make unavailable or deny, a dwelling to any person because of race, color . . . or national origin" and to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race, color . . . or national origin. 42 U.S.C. §§ 3604(a) and (b). These provisions encompass a broad range of acts and theories of discrimination. *E.g., Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urb. Dev.*, 620 F.3d 62, 66 (1st Cir. 2010) (the FHA "contemplates three types of claims for perceived discrimination: disparate treatment, disparate impact, and failure to make reasonable accommodations" (internal citations and quotation marks omitted)).

In *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project*, the Supreme Court held that "[r]ecognition of disparate-impact claims is consistent with the FHA's central purpose." 576 U.S. 519, 539 (2015). The core purpose of disparate-impact liability is, as the Court explained, to eliminate practices that arbitrarily and disproportionately exclude protected

---

[4] This Statement focuses only on Plaintiffs' FHA claims.

[5] The United States does not take a position on any other issues not addressed in this Statement, including the application of the law to the facts of this case.

class members. *Id.* at 540. The First Circuit had previously adopted "the consensus among the circuits" and ruled that disparate impact claims were permissible under the FHA. *See Langlois v. Abington Hous. Auth.*, 207 F.3d 43, 49 (1st Cir. 2000); *Macone v. Town of Wakefield*, 277 F.3d 1, 5 (1st Cir. 2002); *Barrett v. H&R Block, Inc.*, 652 F. Supp. 2d 104, 108 (D. Mass. 2009).

In 2013, HUD issued a regulation establishing the "[b]urdens of proof in discriminatory effects cases." 78 Fed. Reg. 11,460 (24 C.F.R. 100.500 (2013 Rule)); *see also* 24 C.F.R. 100.500(c) (2013). Under this burden-shifting framework, (1) a plaintiff must prove that the challenged policy "caused or predictably will cause a discriminatory effect" on a protected class; (2) the burden then shifts to the defendant to prove that the "challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests"; and (3) if the defendant satisfies its burden under step two, the plaintiff, in order to prevail, must prove that the defendant's interest in "the challenged practice could be served by another practice that has a less discriminatory effect." 24 C.F.R. 100.500(c)(1)-(3) (2013).[6] Many courts have recognized that *Inclusive Communities* effectively affirmed the 2013 Rule's burden-shifting test and applied the 2013 Rule's framework.[7]

---

[6] In 2020, HUD published a rule titled "HUD's Implementation of the Fair Housing Act's Disparate Impact Standard" (2020 Rule), which would have repealed the 2013 Rule and replaced it with significantly altered burden-shifting standards for disparate impact claims. Before the 2020 Rule could take effect, however, this district court issued a preliminary injunction staying its implementation and enforcement. *See Mass. Fair Hous. Ctr.* v. *HUD*, 496 F. Supp. 3d 600, 603 (D. Mass. 2020). After reconsidering the 2020 Rule, HUD has proposed re-codifying the 2013 Rule, which remains in effect due to the preliminary injunction in place. *See* 86 Fed. Reg. 33,590 (June 25, 2021). On December 7, 2022, after considering the comments received on the proposed rule, HUD submitted the final discriminatory effects rule to OMB, which is currently reviewing the rule. *See* Reinstatement of Discriminatory Effects Standard (FR-6251), *available at* https://perma.cc/P6YJ-FHS5.

[7] *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 618-20 (2d Cir. 2016); *Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo*, 759 F. App'x 828, 834-35 (11th Cir. 2018); *de Reyes v. Waples Mobile Home Park L.P.,* 903 F.3d 415, 426 n.6, 428 (4th Cir. 2018); *see also Nat'l Fair Hous.*

### B.     Disparate Impact Claims Under the Fair Housing Act

In considering the Defendants' motions, the Court must evaluate whether Plaintiffs have

pleaded sufficient facts to demonstrate a plausible entitlement to relief under the FHA. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 677-78 (2009). To establish an FHA disparate impact claim, plaintiffs

must show "the occurrence of certain outwardly neutral practices" and "a significantly adverse or

disproportionate impact on persons of a particular type produced by the defendant's facially

neutral acts or practices." *MHANY Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 617 (2d Cir.

2016) (internal citation and quotation marks omitted). As relevant here, at the pleading stage, "a

plaintiff must 'allege facts . . . or produce statistical evidence demonstrating a causal connection'

between the challenged policy and the discriminatory effect." *Conn. Fair Hous. Ctr. v.*

*CoreLogic Rental Prop. Sols.*, LLC, 369 F. Supp. 3d 362, 377-78 (D. Conn. 2019) (citing

*Inclusive Communities Project, Inc.*, 576 U.S. at 543 (other citations omitted)); *see also Reyes v.*

*Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 425-26 (4th Cir. 2018) (at the pleading

stage, plaintiff must allege facts or produce statistical evidence demonstrating a causal

connection between the alleged disparities and the challenged practice); *Barrow v. Barrow*, No.

CV 16-11493-FDS, 2017 WL 2872820, at *3 (D. Mass. July 5, 2017) ("In order to properly

assert a disparate impact claim, plaintiff[ ] must plead (1) a specific and actionable policy, (2) a

---

*All. (NFHA) v. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 29-30 (D.D.C. 2017*); NFHA v. Bank of Am., N.A.,* 401 F. Supp. 3d 619, 631-32 (D. Md. 2019); *See, e.g., River Cross Land Co., LLC v. Seminole Cty.*, 2021 WL 2291344, at *23-24 (M.D. Fla. June 4, 2021); *Jones v. City of Faribault,* No. 18-1643 (JRT/HB), 2021 WL 1192466, at *17 (D. Minn. Feb. 18, 2021*); Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC,* 478 F. Supp. 3d 259, 296 (D. Conn. 2020) (and related decisions, *see CoreLogic*, No. 3:18-cv-705 (VLB), 2020 WL 401776 (D. Conn. Jan. 24, 2020)); *Borum v. Brentwood Vill., LLC*, Civ. No. 16-1723 (RC), 2020 WL 1508906, at *5 (D.D.C. Mar. 30, 2020); *NFHA v. Deutsche Bank Nat'l Trust*, 2019 WL 5963633, at *13 (N.D. Ill. Nov. 13, 2019); *Yellowstone Women's First Step House Inc. v. City of Costa Mesa,* 2019 WL 6998663, at *2 (C.D. Cal. Nov. 4, 2019*); Mass. Fair Hous. Ctr. v. HUD,* 496 F. Supp. 3d 600, 611 (D. Mass. 2020).

disparate impact, and (3) facts raising a sufficient inference of causation." (citing *Miller v. Countrywide Bank, N.A.*, 571 F. Supp. 2d 251, 255 (D. Mass. 2008)).

Defendants attempt to graft various other requirements onto the disparate impact pleading standard and suggest that the Amended Complaint fails to meet those criteria. *First*, Defendants suggest that, in addition to identifying a specific "outwardly neutral policy" to challenge, a disparate impact plaintiff must *also* allege specific facts establishing that the policy is "artificial, arbitrary, and unnecessary." Metropolitan Mem. Supp. 7-9, ECF No. 30 (arguing that the Amended Complaint fails to satisfy this requirement); SafeRent Mem. Supp. 7-9, ECF No. 32 (same). However, *Inclusive Communities* did not alter the pleading standard for disparate impact claims, much less add a new requirement that plaintiffs independently allege that the challenged policy is "artificial, arbitrary, and unnecessary." Rather, *Inclusive Communities* invoked that language—which originally came from *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1977)— to illustrate the types of policies that disparate impact law is designed to address. Far from adopting a new and heightened pleading requirement, the Court was explaining that disparate impact law has "always" included various doctrinal "safeguards" to ensure that disparate impact suits prevail only when they target policies that are truly "artificial, arbitrary, and unnecessary." 576 U.S. at 540 (quoting *Griggs*, 401 U.S. at 431). Nothing in *Inclusive Communities* altered the pleading standards for disparate impact claims or requires that plaintiffs plead facts establishing that an "outwardly neutral policy" is also "artificial, arbitrary and unnecessary." 576 U.S. at 539-40.[8]

_____

[8] *Inclusive Communities* was decided following a grant of partial summary judgment and a bench trial on the remainder of the claims, so the Court had no reason to speak to the pleading standard. *See generally* 576 U.S. at 526 (discussing the case's procedural history and what the District Court had "found").

Furthermore, requiring Plaintiffs to also allege that the "outwardly neutral policy" is "artificial, arbitrary, and unnecessary," conflates the burden-shifting framework for proving disparate impact claims with the pleading burden. To plausibly allege that a policy is "artificial, arbitrary and unnecessary," plaintiffs would have to allege facts indicating that a "less discriminatory alternative" to the challenged practice exists. This reformulation essentially imports the last step of the burden-shifting framework for establishing FHA disparate impact claims into the pleading stage. This formulation also makes little sense because any "less discriminatory alternative" must serve a defendant's proffered "substantial, legitimate, non-discriminatory interest," and defendants are not yet obligated at the pleading stage to put forth such an interest.

Defendants' reliance on *Burbank Apartments Tenant Ass'n v. Kargman*, 48 N.E.3d 394 (Mass. 2016) in support of their argument is similarly misplaced. That court dismissed the disparate impact claim because it was "speculative and indefinite" and did not plead facts to establish causality, not because of a failure to plead that the challenged policy was "artificial, arbitrary, and unnecessary." 48 N.E.3d at 413. Nor does the factually inapposite case of *Cobb Cnty. v. Bank of Am. Corp.*, 183 F. Supp. 3d 1332 (N.D. Ga. 2016), support the Defendants' arguments. There, the court held that the complaint focused on "intentional decisions on the part of Defendants to discriminate against minorities rather than pleading a facially neutral policy as required," and dismissed the complaint for failure to state a claim. 183 F. Supp. 3d at 1346-47.

Defendants also suggest that isolated language from a HUD guidance document for an unrelated program forecloses any FHA claim challenging a policy of using credit history in tenant screening. It does not. Defendants each point to HUD's Handbook for "Occupancy Requirements of Subsidized Multifamily Housing Programs" ("Handbook") as a rationale for

why the SafeRent Score's incorporation of credit history is appropriate and lawful, and therefore could not be arbitrary or unnecessary. SafeRent Mem. Supp. 7-9; Metropolitan Mem. Supp. 10. Yet Defendants point to nothing in the Handbook suggesting that credit checks are insulated from the same disparate impact analysis that is generally applicable to housing policies. Moreover, the Handbook does not comprehensively capture, or even fairly represent, all that HUD or the federal government has said on considering credit history in the housing context. *See, e.g.,* General FAQ – Housing Providers and Fair Housing, *available at* https://perma.cc/68LE-DLYM (in guidance to housing providers generally, HUD highlighting that credit screening may, in certain circumstances, have an unjustified discriminatory effect, and therefore be unlawful).[9] The Amended Complaint alleges that this particular policy—the use of the SafeRent Score system—has an unjustified disparate impact on Black and Hispanic applicants. Am. Compl. ¶ 122. Statements in the Handbook and elsewhere about the use of credit checks generally do not change the validity of these allegations.

*Second*, Defendants argue that Plaintiffs, in order to allege a statistical disparity, must challenge the entire "formula" of the scoring system, not just one element—the use of credit history—and thus must provide statistical findings specific to the disparate impact of the scoring system. SafeRent Mem. Supp. 10-11. But the First Circuit has upheld FHA claims challenging individual elements of policies and practices. *See Langlois*, 207 F.3d at 46 (upholding the district court's preliminary finding of a disparity when plaintiffs challenged the use of "local preference"

---

[9] Indeed, in the handbook for the program actually at issue, the 2020 Housing Choice Voucher Program Guidebook, HUD lists the type of information that Public Housing Authorities (PHAs) "may inform owners that they may consider" with respect to a family's background. *See* "Tenant Screening," Section 9.7 at 24, *available at* https://perma.cc/V6M7-TAXB. In this handbook, HUD states that PHAs may inform owners that they "may consider" certain factors, such as "Payment of rent and utilities," and "Care of unit and premises," but make no mention of credit scores, credit history, or non-tenancy related debts.

as part of the criteria used in the lottery system to obtain a voucher, and dismissing the claim on other grounds).

Defendants also appear to argue that Plaintiffs must allege with greater specificity the disparity between Black and Hispanic voucher holders and voucher holders of other races. SafeRent Mem. Supp. 9-10. But that level of specificity is often not even required at later stages of litigation. *CoreLogic*, 369 F. Supp. 3d at 379 (noting that "sufficient statistical support" is "not required" at the pleading stage); *see also Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund Corp.*, 388 F. Supp. 3d 145, 170 (E.D.N.Y. 2019) (on summary judgment, holding that a reasonable fact-finder could credit Plaintiff's experts' use of national statistics applicable to the New York housing market and find Plaintiff proved that a criminal records ban created a disparate impact on the basis of race).[10] Moreover, Plaintiffs offer detailed statistics here alleging that voucher holders are more likely to be Black and Hispanic. Am. Compl. ¶¶ 45-61 & n.49. At the pleading stage, such statistics are sufficient to plead a disparate impact claim. *CoreLogic*, 369 F. Supp. 3d at 377-79; *NFHA v. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 34 (D.D.C. 2017).

*Third and finally*, Defendants argue that Plaintiffs must plead specific facts demonstrating that the algorithm's reliance on credit scores or failure to consider voucher

---

[10] *Connecticut Fair Housing Center v. CoreLogic* has since proceeded through cross-motions for summary judgment and to a bench trial which concluded in late November 2022, with a final ruling pending with the court. *See* Case No. 3:18-CV-705 (VLB). In its ruling on the parties' motions for summary judgment, the court denied defendant's motion for summary judgment and permitted plaintiff's disparate impact claims alleging race discrimination to proceed to trial, including the plaintiff's claims underpinned by national and state-level statistical evidence. 478 F. Supp. 3d 259, 292-94 (D. Conn. 2020). While there is further support for these assertions in the *CoreLogic* ruling on summary judgment, and other summary judgment opinions permitting reliance on national statistics in cases claiming disparate impact discrimination under the FHA, *e.g.*, *Rhode Island Comm'n for Hum. Rts. v. Graul*, 120 F. Supp. 3d 110, 125 (D.R.I. 2015), this section of the Statement cites primarily to cases that address pleading requirements, including the ruling denying defendant's motion to dismiss from the *CoreLogic* case, 362 F. Supp. 3d 362.

income, "not some other factor, caused any disparity in housing outcomes." SafeRent Mem. Supp. 12. There is no dispute that a disparate impact plaintiff must allege causality. But insofar as Defendants argue for a heightened causality requirement based on *Inclusive Communities*, they are wrong: *Inclusive Communities* did not alter the plausibility standard for pleading disparate impact claims or announce a new, or additional, causality requirement for pleading such claims. *See NFHA v. Travelers Indem. Co.*, 261 F. Supp. 3d at 30. Rather, the *Inclusive Communities* Court addressed causation as another recognized, already existing, "safeguard" in a disparate impact case. 576 U.S. at 542 ("[A] disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." (citing *Wards Cove Packing Co*, 490 U.S. at 653)).[11]

SafeRent's reliance on *Baker v. City of San Diego*, 19-CV-1013 JO (DEB), to argue for dismissal, is inapt. In *Baker*, the district court dismissed the plaintiffs' complaint for failure to include allegations about "the essential nexus that it was the identified policies, and not some other factor . . . that create the disparate effect." *Baker v. City of San Diego*, 2022 WL 484973, at *4 (S.D. Cal. Feb. 16, 2022) (plaintiffs had alleged six outwardly neutral policies, and had adequately alleged a disproportionate effect, but failed in the court's view to "prove a robust causal connection between the specific policies" and the alleged statistical disparity). However, the Amended Complaint here does identify an "essential nexus" between SafeRent's scoring

---

[11] This interpretation is further supported by the fact that the Supreme Court remanded the case to the district court to apply the 2013 Rule and reassess whether the plaintiff identified a challenged policy, a disparity, and a link between the two. The analysis of the causation is what is robust, not the level of specificity or evidence required in the plaintiff's pleading.

system and the disproportionate effect on certain rental applicants based on race. Am. Comp. ¶¶ 30-31, 45-61, 122.[12]

C.    **The Fair Housing Act Applies to Residential Screening Companies, Including SafeRent**

SafeRent also moves to dismiss on the basis that the Fair Housing Act "do[es] not apply to companies like SafeRent that are not landlords and do not make housing decisions, but only offer services to assist those that do make housing decisions." SafeRent Mem. Supp. 15. SafeRent's argument misconstrues the clear statutory text of the FHA. It also conflicts with caselaw holding that tenant screening companies can be liable for FHA violations, as well as decades of other precedents affirming that FHA liability reaches a broad array of entities providing housing-related services.

The Amended Complaint alleges that SafeRent violated two provisions of the FHA: Section 3604(a), which prohibits conduct that "make[s] unavailable . . . a dwelling to any person because of race . . . or national origin," and Section 3604(b), which prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services," also "because of race . . . or national origin." 42 U.S.C. § 3604(a)-(b). Neither provision limits liability for violations to those who "make housing decisions," as SafeRent suggests. *See* SafeRent Mem. Supp. 15-17. Rather, Section 3604 can apply to any entity whose conduct is prohibited by the section's terms. The language of the FHA plainly "focuses on prohibited acts," *Meyer v. Holley*, 537 U.S. 280, 285 (2003), not specific actors.

---

[12] Nor is Defendants' reliance on *Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 962 (9th Cir. 2021) persuasive. *Southwest Fair Housing Council* discussed the requirements for establishing a prima facie case of disparate impact on a motion for summary judgment and concluded that the plaintiffs had met their burden. 17 F.4th at 962-64.

The FHA broadly permits entities to "be held liable when they have personally committed or contributed to a Fair Housing Act violation." *Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fisher*, 6 F. Supp. 3d 1272, 1293 (S.D. Fla. 2014). HUD's regulations set forth direct and vicarious liability theories that may apply to FHA violations. 24 C.F.R. § 100.7. Under a direct liability theory, plaintiffs must only allege that SafeRent's "own conduct . . . results in a discriminatory housing practice." *Id.* § 100.7(a)(1)(i); *see* 24 CFR § 100.20 (defining "discriminatory housing practice" to include violations of 42 U.S.C. § 3604).

Consistent with those regulations, the court in *CoreLogic* found that the plaintiffs had alleged facts sufficient to proceed under a theory of direct liability against CoreLogic for its tenant-screening activities. *CoreLogic*, 369 F. Supp. 3d at 372. The court "acknowledge[d] that housing providers are often the target of FHA claims," but concluded that "[n]othing in the language of the statute precludes [a tenant screening company's] liability" for FHA violations. *Id.* at 374-75. There, CoreLogic also argued for dismissal because a tenant screening company does not "deal directly with prospective buyers or tenants" and is not "in control of the housing-related decisions." The court rejected this argument by explaining that the screening process is "directly related to the real estate transaction because it determined who was qualified to occupy a housing unit," and thus could trigger potential FHA liability. *Id.* at 373.

This view of the FHA's coverage is consistent with decades of judicial precedent. Since its enactment, courts have interpreted the FHA to apply to a wide range of persons and entities that provide services in connection with housing.[13] SafeRent tries to distinguish *CoreLogic* by

---

[13] *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 406 (7th Cir. 2010) (applying the FHA to lenders); *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 290 (7th Cir. 1992) (insurers); *United States v. City of Black Jack*, 508 F.2d 1179, 1184-85 (8th Cir. 1974) (state and municipal bodies); *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.*, 3 F.Supp.2d 661, 665 (D. Md. 1998) (developers); *United States v. Am. Inst. of Real Est. Appraisers of Nat'l Ass'n of Realtors*,

asserting that particular theories of liability addressed in that case—specifically, that CoreLogic "knew of and had the power to correct and end a discriminatory housing practice" and "was the housing provider's agent"—are not alleged here. SafeRent Mem. Supp. 17. However, SafeRent cannot avoid *CoreLogic*'s central holding by looking to that court's discussion of *other* theories of liability that may not apply to this case. *See* 362 F. Supp. 3d at 373-75.

Here, Plaintiffs allege that SafeRent's conduct resulted in the denial of housing, or different terms and conditions of housing, to certain applicants because of their race or national origin. *See* Am. Compl. ¶ 126. To this end, Plaintiffs include specific, detailed allegations describing how SafeRent markets and sells its screening tool to housing providers to "automate human judgment" and "identify top quality applicants" and "better renters" by making case-by-case recommendations about whether the provider should approve, approve with conditions, or deny an applicant. *Id.* ¶¶ 22, 25, 29, 41-42. While housing providers consult with SafeRent to "select the minimum SafeRent Score required for a rental application to be approved," *id.* ¶ 39, SafeRent does not share any details about its algorithm with its housing provider customers, rental applicants, or the public. *Id.* ¶¶ 33, 36-37. When SafeRent provides an applicant's final score along with "approve" or "deny" language to the housing provider, the provider does not see what SafeRent's algorithm considered to make the assessment. *Id.* ¶ 38. As set forth in the Amended Complaint, SafeRent "effectively controls the decision to approve or reject a rental application." *Id.* ¶ 43. Plaintiffs also allege that housing providers, including Defendant Metropolitan, relied on the outcome of SafeRent's screening in offering housing. *Id.* ¶¶ 43-44.

---

442 F. Supp. 1072, 1079 (N.D. Ill. 1977) (appraisers); *Rivera v. Mora Dev. Corp.*, --- F. Supp. 3d ---, 2022 WL 3613894, at *5 (D. P. R. Aug. 23, 2022) (condominium association and developers); *United States v. Hughes Mem'l Home*, 396 F. Supp. 544, 549-51 (W.D. Va. 1975) (collecting cases applying the FHA to diverse entities).

Finally, Plaintiffs make a series of allegations connecting SafeRent Scores to the disproportionate discriminatory effect against certain Black and Hispanic applicants. *See supra*, Part B. Those allegations—assuming the Court concludes they otherwise satisfy the elements of a disparate impact claim—suffice to establish that SafeRent's tenant-screening activities are subject to the FHA's prohibition on discrimination.

### III.    Conclusion

The United States respectfully requests the Court's consideration of this Statement of

Interest, and welcomes the opportunity to provide further assistance at the Court's request.

Dated:  January 9, 2023

Respectfully submitted,

DAMON SMITH
General Counsel

RACHAEL S. ROLLINS
United States Attorney for the
District of Massachusetts

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

SASHA SAMBERG-
CHAMPION
Deputy General Counsel for
Enforcement & Fair Housing

JENNIFER A. SERAFYN
Chief, Civil Rights Unit

SAMEENA SHINA MAJEED
Chief

AYELET WEISS
Deputy Assistant General
Counsel for Fair Housing
Compliance
JULIA DYKSTRA
Trial Attorney

U.S. Department of Housing &
Urban Development
451 7th Street, SW
Washington, DC 20410

*/s/Gregory J. Dorchak*
GREGORY J. DORCHAK
Assistant United States Attorney
1 Courthouse Way, 9th Floor
Boston, Massachusetts 02210
gregory.dorchak@usdoj.gov

*/s/Kinara A. Flagg*
VARDA HUSSAIN
Special Litigation Counsel
KINARA A. FLAGG
Trial Attorney
Housing and Civil Enforcement
Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street, NE, Suite 8.1110
Washington, DC 20530
Phone: (202) 353-4141
(202) 305-2011
Fax: (202) 514-1116
kinara.flagg@usdoj.gov
Attorneys for
United States of America

## CERTIFICATE OF SERVICE

I, Kinara A. Flagg, Trial Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Kinara A. Flagg*
Kinara A. Flagg
Trial Attorney

Dated: January 9, 2023