UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARY LOUIS AND MONICA DOUGLAS,
ON BEHALF OF THEMSELVES AND
SIMILARLY SITUATED PERSONS, AND
COMMUNITY ACTION AGENCY OF
SOMERVILLE, INC.,

        Plaintiffs,

      v.

SAFERENT SOLUTIONS, LLC AND
METROPOLITAN MANAGEMENT GROUP,
LLC,

        Defendants.

Civil Action No. 1:22-CV-10800-AK

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION TO CERTIFY THE CLASSES FOR SETTLEMENT PURPOSES AND DIRECT NOTICE OF SETTLEMENT TO THE CLASSES**

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................... 1

II.  HISTORY OF THE LITIGATION ...................................................................... 3

III. SUMMARY OF THE PROPOSED SETTLEMENT ........................................... 4
     A.   The Settlement Classes .............................................................................. 5
     B.   Injunctive Relief Provided by the Proposed Settlement ............................ 5
     C.   Monetary Relief Provided by the Proposed Settlement ............................. 6
     D.   Notice and Claims Process ......................................................................... 7
     E.   Attorneys' Fees and Costs .......................................................................... 9
     F.   Releases .................................................................................................... 10

IV.  ARGUMENT ...................................................................................................... 10
     A.   The Class Should be Certified for Settlement Purposes. ......................... 11
          (i)    Plaintiffs Satisfy the Requirements of Rule 23(a). ...................... 11

          (ii)   Plaintiffs Satisfy the Requirements of Rule 23(b)(2). ................. 13

          (iii)  Plaintiffs Satisfy the Requirements of Rule 23(b)(3). ................. 14

     B.   Notice Should Be Issued Because the Proposed Settlement Agreement Is
          Likely to Be Found Fair, Reasonable, and Adequate. .............................. 15
          (i)    The Settlement Classes Are Adequately Represented by the
                 Proposed Class Representatives and Plaintiffs' Counsel. ............. 15

          (ii)   The Proposed Settlement was the Product of Arm's-Length
                 Negotiation. .................................................................................. 16

          (iii)  The Proposed Settlement Provides Settlement Class Members with
                 More than Adequate Relief. .......................................................... 17

          (iv)   The Proposed Settlement Treats Class Members Equitably. ........ 19

     C.   The Proposed Notice Satisfies Rule 23(e) and the Requirements of Due
          Process. ..................................................................................................... 19

V.   CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

Page

CASES

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................16

*Andrews v. Bechtel Power Corp.*,
   780 F.2d 124 (1st Cir. 1985)...................................................................................18

*Bacchi v. Mass. Mut. Life Ins. Co.*,
   No. 12-11280, 2017 WL 5177610 (D. Mass. Nov. 8, 2017) ...........................20, 21

*Bussie v. Allmerica Fin. Corp.*,
   50 F.Supp.2d 59 (D. Mass. 1999) ...........................................................................22

*Connor B. ex rel. Vigurs v. Patrick*,
   272 F.R.D. 288 (D. Mass. 2011)..............................................................................19

*In re Credit Suisse-AOL Sec. Litig.*,
   253 F.R.D. 17 (D. Mass. 2008).................................................................................14

*Disability Law Ctr. v. Mass. Dep't of Corr.*,
   960 F.Supp.2d 271 (D. Mass. 2012) ........................................................................20

*George v. TRS Staffing Sols., Inc.*,
   2010 WL 11519346 (C.D. Cal. Sept. 13, 2010) .....................................................22

*Hawkins ex rel. Hawkins v. Comm'r of N.H. Dep't of Health & Human Servs.*,
   No. 99-143, 2004 WL 166722 (D.N.H. Jan. 23, 2004) ..........................................15

*Hill v. State St. Corp.*,
   No 09-12146, 2015 WL 127728 (D. Mass. Jan. 8, 2015).......................................20

*Hochstadt v. Bos. Sci. Corp.*,
   708 F.Supp.2d 95 (D. Mass. 2010) ..........................................................................13

*Jean-Pierre v. J&L Cable TV Servs., Inc.*,
   538 F.Supp.3d 208 (D. Mass. 2021) ...........................................................15, 20, 22

*Lapan v. Dick's Sporting Goods, Inc.*,
   No. 13-CV-11390, 2015 WL 8664204 (D. Mass. Dec. 11, 2015)..........................18

*Louis v. SafeRent Sols. LLC*,
   No. 22-CV-10800, 2023 WL 4766192 (July 26, 2023)............................................4

# TABLE OF AUTHORITIES

Page

*In re Lupron Mktg. & Sales Practices Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) ............................................................................22

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
    671 F.Supp. 819 (D. Mass. 1987) .......................................................................20

*Meaden v. HarborOne Bank*,
    No. 23-CV-10467, 2023 WL 3529762 (D. Mass. May 18, 2023) ...................13, 16

*Mongue v. Wheatleigh Corp.*,
    No. 18-cv-30095, 2023 WL 5435918 (D. Mass. Aug. 23, 2023) ..........................22

*Moreno v. Capital Building Maintenance & Cleaning Servs., Inc.*,
    2021 WL 178847 (N.D. Cal. May 5, 2021) .........................................................22

*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters' Health Benefits Fund*,
    582 F.3d 30 (1st Cir. 2009) .................................................................................17

*Nat'l Ass'n of Deaf v. MIT*,
    No. 15-CV-30024, 2020 WL 1495903 (D. Mass. Mar. 27, 2020) ........................19

*New Eng. Biolabs, Inc. v. Miller*,
    No. 20-CV-11234, 2022 WL 20583575 (D. Mass. Oct. 26, 2022) .......................19

*New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*,
    No. 05-CV-11148, 2009 WL 10703302 (D. Mass. Mar. 30, 2009) ................13, 14

*In re Pharma. Indus. Avg. Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009) .................................................................................18

*Reid v. Donelan*,
    297 F.R.D. 185 (D. Mass. 2014) .........................................................................19

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) .....................................................................12, 17

*Reppert v. Marvin Lumber & Cedar Co., Inc.*,
    359 F.3d 53 (1st Cir. 2004) .................................................................................23

*Roberts v. TJX Cos., Inc.*,
    No. 13-cv-13142, 2016 WL 8677312 (D. Mass. Sept. 30, 2016) .........................21

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
    323 F.3d 32 (1st Cir. 2003) .................................................................................13

## TABLE OF AUTHORITIES

<u>Page</u>

**RULES**

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

## I.      INTRODUCTION

Plaintiffs Mary Louis and Monica Douglas (collectively "Plaintiffs") submit this Memorandum in Support of Their Unopposed Motion to Certify the Classes for Settlement Purposes and Direct Notice of Settlement to the Classes. The proposed Class Action Settlement Agreement and Release ("Agreement"), attached as Exhibit 1, will resolve the instant action against SafeRent Solutions, LLC ("SafeRent" or "Defendant").[1] The Agreement is the result of arm's-length, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation. The settlement negotiations were facilitated by an experienced mediator, the Honorable Diane M. Welsh (Ret.), a former federal Magistrate Judge in the Eastern District of Pennsylvania who has a nationwide reputation for her settlement mediation abilities. Judge Welsh has submitted a declaration in support of Plaintiffs' Motion, which is attached as Exhibit 2.

The Settlement achieved by the Parties is fair, reasonable, and provides substantial benefits to the entire Settlement Classes[2] now, while avoiding the delay, risk, and expense inherent in the continued litigation of this action. As detailed below, SafeRent has agreed to significant changes to its business practices equivalent to the injunctive relief Plaintiffs sought by filing this action. The Parties have also agreed that SafeRent will establish a Settlement Fund in the amount of $1,175,000 in monetary relief that will be distributed to Settlement Class Members and used to pay settlement administration costs and service payments, if awarded by the Court, to the two proposed Class Representatives up to $10,000 each, or $20,000 total, for their work and time expended on this case. The proposed Settlement Agreement permits Plaintiffs to apply for a

---

[1] SafeRent has agreed to a separately negotiated settlement with organizational plaintiff Community Action Agency of Somerville, Inc. ("CAAS") to settle CAAS's non-class claims on an individual basis. The CAAS settlement will only become final if the class settlement is approved. The payment to CAAS does not come from the Settlement Fund, and no portion of the payment to CAAS will be paid to Settlement Class Counsel. Nor will CAAS's attorneys' fees be paid from the fee award in the proposed class settlement. Plaintiff Monica Douglas is separately negotiating a possible settlement of her individual claim with Defendant Metropolitan Management Group, LLC.

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Agreement.

separate award of attorneys' fees and costs up to $1,100,000, with any unawarded funds to be added to the Settlement Fund. Plaintiffs have filed a Motion for Attorneys' Fees, Costs, and Service Awards ("Attorneys' Fees Motion") concurrently with this Motion.

Additionally, the Notice that Plaintiffs propose be distributed to the Settlement Classes, attached as Exhibit 3, and the schedule for issuance of notice and the fairness hearing, as set forth in the Proposed Order Certifying the Classes for Settlement Purposes and Directing Notice of Settlement to the Classes ("Preliminary Approval Order"), attached as Exhibit 4, will allow an adequate opportunity for the Settlement Classes to review and respond to the proposed Settlement and are consistent with the Parties' desire for prompt implementation of the terms of the proposed Settlement. Plaintiffs also propose that the Court appoint Epiq to be the Settlement Administrator, given Epiq's extensive experience in administering settlements and after reviewing competitive bids from three class settlement administration companies. *See* Epiq Declaration, attached as Exhibit 5.

Accordingly, Plaintiffs respectfully request that the Court grant their Motion and enter the Preliminary Approval Order submitted herewith that would:

- Provisionally certify the Settlement Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) for settlement purposes only;

- Appoint Plaintiffs Mary Louis and Monica Douglas as Settlement Class Representatives, and appoint Cohen Milstein Sellers & Toll PLLC, Greater Boston Legal Services, and the National Consumer Law Center as Settlement Class Counsel;

- Appoint Epiq as Settlement Administrator;

- Approve the Notice, including SafeRent's provision to the Settlement Administrator of the identifying information for Settlement Class Members available in SafeRent's databases, and direct that the Notice be disseminated to the Settlement Classes by Settlement Administrator Epiq;

- Set a date ninety days from the date Notice is disseminated as the deadline for submission of any objections to the proposed Settlement; and

- Schedule a fairness hearing on or after November 18, 2024, which is ninety days after the anticipated deadline for Class Members to object to the proposed Settlement Agreement.

2

## II.     HISTORY OF THE LITIGATION

On May 25, 2022, Plaintiffs filed this putative class action against Defendant SafeRent, challenging its proprietary "SafeRent Score" product, a tenant-screening service sold by Defendant and purchased by rental housing providers to make leasing decisions. Plaintiffs filed their operative Amended Complaint on August 26, 2022. Doc. No. 15. The Amended Complaint alleges that the SafeRent Score is calculated using a formula that results in the disproportionate denial of rental housing for rental housing applicants who use housing choice vouchers, with a further disparate impact on Black and Hispanic applicants who use vouchers, because the formula relies heavily on non-tenancy debt, which Plaintiffs allege is not predictive of the ability to pay rent. Doc. No. 15 ¶¶ 1–10, 45–61. Plaintiffs further allege that this disparate impact cannot be justified by any business necessity because a tenant's housing voucher uniquely protects the housing provider's receipt of monthly rent. Doc. No. 15 ¶¶ 62–73. On behalf of the putative classes, Plaintiffs brought disparate impact fair housing claims against SafeRent under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604 *et seq.* and Massachusetts General Laws ch. 151B §§ 4(6), 4(10) ("Massachusetts Discrimination Law"), and claims of unfair and deceptive business practices under Massachusetts General Laws ch. 93A § 9. Doc. No. 15 ¶¶ 120–126, 134–141, 150–157, 165–183.

SafeRent filed a motion to dismiss Plaintiffs' Amended Complaint on October 27, 2022, arguing, among other things, that the prohibition on disparate impact discrimination in housing under the FHA and the Massachusetts Discrimination Law does not extend to tenant screening companies such as SafeRent. *See* Doc. No. 32. On July 26, 2023, the Court denied SafeRent's motion to dismiss the housing discrimination claims, finding Plaintiffs had sufficiently alleged that the SafeRent Score "has a disproportionate impact on Black and Hispanic applicants and voucher holders," directly resulting "in a disproportionate rate of housing denials for these protected groups." *Louis v. SafeRent Sols. LLC*, No. 22-CV-10800, 2023 WL 4766192, at *12 (July 26, 2023). The Court granted SafeRent's motion to dismiss with respect to Plaintiffs' unfair and deceptive business practices claim under G.L. Ch. 93A. *See id.* at *15.

Plaintiffs began to prepare for discovery. However, before embarking on a costly and

3

lengthy discovery process, the Parties agreed to explore settlement. They identified a highly skilled and reputable mediator, the Honorable Diane M. Welsh (Ret.), and promptly scheduled a mediation session, which took place on November 6, 2023. In advance of the mediation, the Parties exchanged detailed mediation statements, setting forth the strengths and weaknesses of their respective positions and, after the Court entered a Protective Order (Doc. No. 96) on October 26, 2023, SafeRent provided a set of confidential, attorneys-eyes-only documents in response to Plaintiffs' pre-mediation discovery requests. This information included documents relating to the named Plaintiffs' applications for housing and SafeRent's analysis of those applications, information explaining the function of each of the different tenant-screening models SafeRent sells to Massachusetts housing providers, including its "Affordable Model," "Market Model," and "No-Credit Model," and other information about the SafeRent Score and how it is calculated.

On November 6, 2023, the Parties had a productive mediation session during which SafeRent agreed in principle to significant injunctive relief, though it took considerable time after the mediation to reach an agreement setting forth the exact parameters of such changes in writing. Following the mediation, SafeRent provided pertinent information and documents on a confidential, attorneys-eyes-only basis, so that the Parties could come to an agreement on a fair monetary settlement amount. With the assistance of Judge Welsh, the Parties continued to engage in comprehensive settlement discussions, and on December 22, 2023, executed a Memorandum of Settlement, resulting in an agreement to resolve the case as set forth in the proposed Settlement.

### III.   SUMMARY OF THE PROPOSED SETTLEMENT

Plaintiffs brought this action to ensure that individuals who use housing vouchers are not denied housing based on their SafeRent Score—a product Plaintiffs allege has not been proven to effectively and fairly screen tenants who pay most, or all, of their rent with housing vouchers. This lawsuit also was filed to secure compensation for Plaintiffs and putative Class Members who were unfairly denied housing based on their SafeRent Score. The relief afforded by the proposed Settlement achieves both of these goals. A description of the key provisions follows.

A. <u>The Settlement Classes</u>

The proposed Settlement seeks relief for the following two Settlement Classes:

All rental applicants who used publicly funded housing vouchers and sought but were denied housing in Massachusetts because of their SafeRent Score at any property using SafeRent's tenant screening services between May 25, 2021 and the date of the entry of the Preliminary Approval Order (the "Massachusetts Income-Based Settlement Class");

All Black and Hispanic rental applicants who used publicly funded housing vouchers and sought but were denied housing in Massachusetts because of their SafeRent Score at any property using SafeRent's tenant screening services between May 25, 2020 and the date of the entry of the Preliminary Approval Order (the "Massachusetts Race-Based Settlement Class").

Ex. 1 §§ 1.17, 1.18.

B. <u>Injunctive Relief Provided by the Proposed Settlement</u>

The proposed Settlement achieves substantial injunctive relief that requires SafeRent to comply with a number of practice changes. For a period of five years, SafeRent will stop providing a "SafeRent Score" to housing providers that are processing applications of prospective tenants who hold housing vouchers. *See* Ex. 1 § 3.5. These practice changes are of the kind and scope that Plaintiffs sought by filing this litigation and will provide significant benefit to voucher-holders applying for housing in Massachusetts.

SafeRent will implement these business practice changes by doing the following, which will be fully effective no later than twelve months from the date the Agreement was executed. *See* Ex. 1 § 3.5.1. First, SafeRent will cease including a SafeRent Score or an accept/decline recommendation based on a tenant screening score in any of its score reports generated for housing providers who subscribe to or purchase SafeRent's "Affordable Model," the SafeRent Score model many housing providers use when submitting information for applicants using vouchers. Ex. 1 § 3.5.2. SafeRent will also be barred from including any other tenant screening score (either from a third party or its own revised model) in its Affordable Model score reports, unless that tenant screening score has been validated for its use for applicants with housing vouchers by the National Fair Housing Alliance or any similar organization agreed to by the Parties. Ex. 1 § 3.5.5(ii)(1). To

5

ensure housing providers have some information about housing voucher applicants to make an informed decision on an application, SafeRent will still provide a report containing the underlying applicant information. Ex. 1 § 3.5.2.

Second, under the proposed Settlement, SafeRent will require housing providers who subscribe to or purchase the "Market Model" or "No-Credit Model"—SafeRent's two other types of tenant-screening scoring models—to affirmatively certify that the rental applicant for whom they are requesting a SafeRent Score is not currently a recipient of any publicly-funded federal or state housing voucher. Ex. 1 § 3.5.3 . If the housing provider does not make this certification, SafeRent, as with the Affordable Model, will provide a report with the underlying applicant information but will not include a SafeRent Score or accept/decline recommendation based on a tenant screening score. Ex. 1 § 3.5.3. As with the terms applicable to the Affordable Model customers, SafeRent will not be allowed to provide non-certifying "Market Model" and "No-Credit Model" customers with any other tenant screening score unless that score has been independently validated. Ex. 1 § 3.5.5(ii)(1) .

Third, the proposed Settlement requires SafeRent to provide training or instruction to housing providers explaining the differences between the Market Model, No-Credit Model, and Affordable Model, and explaining the changes to the SafeRent products and services that are encompassed in the proposed Settlement. Ex. 1 § 3.5.4. This training and instruction will inform and explain to housing providers why they will not receive a SafeRent Score when processing rental application for housing voucher recipients to avoid confusion.

C.   <u>Monetary Relief Provided by the Proposed Settlement</u>

The proposed Settlement provides meaningful monetary relief to members of the Settlement Classes. Under the terms of the Agreement, SafeRent will pay a sum of $1,175,000 into a Settlement Fund within thirty days of the Effective Date. Ex. 1 §§ 1.40, 3.2.1. The Settlement Fund will be used to make payments to members of the Settlement Classes who submit valid claims and to Settlement Administrator Epiq for costs associated with notice and administration. Ex. 1 §

6

3.2.2 .[3] The proposed Class Representatives may also apply to the Court for service awards of no more than $10,000 each, or $20,000 total, payable from the Settlement Fund. Ex. 1 § 3.3. In the event the Settlement Fund is not fully exhausted, the remaining amount will be distributed in a manner agreed upon by the Parties, subject to Court approval. Ex. 1 §§ 3.2.2, 4.7.3. No portion of the Settlement Fund will revert to SafeRent. Ex. 1 § 4.7.3.

        D. <u>Notice and Claims Process</u>

Payments to members of the Settlement Classes will be distributed to individuals who submit a valid and timely Claim Form, as defined by the terms of the proposed Settlement.[4] *See* Ex. 1 § 4.3. SafeRent will first provide to the Settlement Administrator a list of the more than 18,000 individuals who applied for rental housing in Massachusetts during the relevant period and received a SafeRent Score below the score required for an "accept" recommendation, as well as their Social Security numbers and last known addresses, emails, and telephone numbers, if reasonably available to SafeRent. Ex. 1 § 4.2.1. As discussed in Section IV.A.i. below, SafeRent does not know which of these individuals who will receive notice had a housing voucher at the time they received a SafeRent Score, or the race of the individuals. The Parties believe that by sending notice to all individuals for whom SafeRent generated a "decline" or "accept with conditions" SafeRent Score report, notice will be sent to all Settlement Class Members, in addition to several thousand non-class members.

No later than thirty days after SafeRent provides the Settlement Administrator with the list of potential Settlement Class Members and the identifying information in SafeRent's databases, the Settlement Administrator will provide Notice by the following methods. Ex. 1 § 4.2. First, using the identification information provided by SafeRent, the Settlement Administrator will

---

[3] The proposal from Epiq states that the projected costs of the notice and claims process will be between $110,000 and $135,000. *See* Ex. 5 § 34.

[4] Subject to Court approval, the Parties have agreed that, to help ensure that payments from this settlement do not disrupt Class Members' eligibility for public benefits, Settlement Class Members may indicate on the Claim Form whether they wish to receive their settlement payment in a single lump-sum payment or spread in equal parts across two years. Ex. 1 § 4.7.1.1.

obtain the best available contact information for the potential Settlement Class Members. Ex. 1 §
4.2.1. Subject to Court approval, the Settlement Administrator will send hardcopy Notices and/or
email Notices and/or text messages with links to the Settlement Website[5] to those individuals for
whom SafeRent has provided information. Ex. 1 § 4.2.1. The Settlement Administrator will search
for updated contact information as needed, including searching for updated contact information
based on mailings or emails returned as undeliverable. Ex. 1 § 4.2.1. The Settlement Administrator
will mail and/or email the Claim Form to those individuals who are sent notice, with pre-paid
return postage and an envelope to submit a hardcopy Claim Form or, for email notice, a link to the
Settlement Website. Ex. 1 § 4.3.1. The Claim Form will be available on the Settlement Website
and the Settlement Administrator will ensure that the Claim Form can be filled out and signed
electronically. Ex. 1 § 4.3.1.

To submit a claim, Settlement Class Members must complete and sign the Claim Form
(either by physical or electronic signature or by affirmation) and submit the Claim Form no later
than ninety days after the Settlement Administrator first disseminates Notice. Ex. 1 § 4.3.2. The
Claim Form will require Settlement Class Members to provide their name and contact information
and either: (a) documentation sufficient to show that the individual held a housing voucher during
the Relevant Period, or (b) a statement signed under penalty of perjury attesting that the individual
held a voucher during the Relevant Period. Ex. 1 § 1.5. If no documentation is provided, the Class
Member will identify, if possible, the Public Housing Authority ("PHA") that approved and/or
issued the voucher and will provide informed consent to allow the Settlement Administrator to
verify the claimant's voucher status by contacting the relevant PHA, Department of Housing and
Urban Development ("HUD"), and/or the Massachusetts Executive Office of Housing and Livable
Communities ("EOHLC"). Ex. 1 § 1.5. The Claim Form will contain language informing
Settlement Class Members that, by submitting a Claim Form without documentation, the

---

[5] The Settlement Administrator will establish a Settlement Website that will contain a
downloadable Notice and downloadable Claim Form, contact information, and relevant case
documents. Ex. 1 § 4.2.2.

Settlement Class Member is allowing the PHA, HUD, and/or the EOHLC to provide the Settlement Administrator with information about the Settlement Class Member's voucher status and allowing the Settlement Administrator to finally determine whether the Settlement Class Member is eligible to receive a share of the Settlement Fund based on the information, if any, provided by the PHA, HUD, and/or EOHLC. To qualify as a member of the Massachusetts Race-Based Settlement Class, the claimant will be required to declare on the Claim Form under penalty of perjury that the claimant identifies as Black or Hispanic. Ex. 1 § 1.5. The Settlement Administrator will be responsible for reviewing and determining the validity of Claim Forms, including providing a "cure" process. Ex. 1 § 4.3.4.

The Notice will inform Settlement Class Members that they may exclude themselves from the Settlement by mailing a written request to the Settlement Administrator, postmarked no later than ninety days after the Settlement Administrator first disseminates Notice. Ex. 1 § 4.4. The Notice will also inform Settlement Class Members that, if they do not request exclusion, they have the right to object to the proposed Settlement by filing or sending a written objection to the Court, postmarked or filed no later than ninety days after the Notice is first disseminated. Ex. 1 § 4.6.

Settlement Class Members who submit valid and timely Claim Forms will receive *pro rata* payments from the Settlement Fund. Ex. 1 § 4.7.1. Members of the Massachusetts Income-Based Settlement Class *only* or the Massachusetts Race-Based Settlement Class *only* will receive a 1X share of the Settlement Fund, and members of both Classes will receive a 1.5X share. Ex. 1 § 4.7.1.1. Settlement Class Members may indicate on the Claim Form whether they wish to receive their settlement payment in a single lump-sum payment or spread in equal parts across two years. Ex. 1 § 4.7.1.1.[6]

E. Attorneys' Fees and Costs

The proposed Settlement permits Plaintiffs to apply for an award of attorneys' fees and

---

[6] The Parties will provide in the Motion for Final Approval a summary of the number of claimants and the amount each will receive from the Settlement Fund.

costs, not to exceed $1,100,000. Ex. 1 § 3.4.1. This settlement term was negotiated after the relief was substantially agreed upon for Plaintiffs and the Classes and payment will not be made from the Settlement Fund. Plaintiffs' Motion for Attorneys' Fees, filed separately, details Plaintiffs' fees and costs incurred in the litigation of this action, which total more than the $1,100,000 cap on Plaintiffs' petition. The proposed Settlement contemplates that SafeRent will pay any awarded attorneys' fees and costs within seven days of the later of the Effective Date or the receipt by SafeRent of requested tax forms and/or payment information. Ex. 1 § 3.4.4. The Settlement is not conditioned on the Court's approval of Plaintiffs' attorneys' fees request, and if the Court does not award the full amount of fees and costs, any money remaining from the $1,100,000 will be added to the amount paid to the Settlement Fund. Ex. 1 § 3.4.5.

      F.  <u>Releases</u>

In consideration for the business practice changes and monetary relief provided to Plaintiffs and the Classes, the proposed Settlement provides SafeRent with releases of claims. The releases are appropriately tailored to the facts and claims Plaintiffs raised in this case by releasing and forever discharging SafeRent from any and all claims arising out of conduct that occurred as of the date of the execution of the Agreement relating to (a) violations of the FHA, Massachusetts Discrimination Law, and Massachusetts Consumer Protection Law alleged in this case; (b) any and all claims asserted in the Litigation, or based on allegations identified in the Complaint or Amended Complaint; and (c) any and all claims made by voucher-holders for discrimination attributable to SafeRent Scores. Ex. 1 §§ 1.28, 3.6. The Named Plaintiffs also separately agree to generally release SafeRent from any claims arising out of or relating to any conduct that occurred as of the date the Agreement was executed. Ex. 1 § 3.6.2.

**IV.   ARGUMENT**

Under Rule 23(e), the claims of a class proposed to be certified for settlement purposes may only be settled with the Court's approval. Fed. R. Civ. P. 23(e). At the preliminary approval stage, this Court must decide whether notice should be provided to the settlement class about the proposed settlement, which this Court "must" do if the Court determines that "the court will likely

be able to approve the proposal under Rule 23(e)(2); and certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 57 (D. Mass. 2005) (describing the "two-stage procedure" for approving a settlement class, where preliminary approval is appropriate if the settlement is "sufficient to warrant public notice and a hearing" and, if so, "the final decision on approval is made after the hearing").

As discussed more fully below, the instant settlement satisfies all of these requirements. As such, Plaintiffs' request for certification of the Settlement Classes, the issuance of notice, and the scheduling of a final approval hearing should be granted.

A. The Class Should be Certified for Settlement Purposes.

"To obtain class certification, the plaintiff must establish the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3)." *Hochstadt v. Bos. Sci. Corp.*, 708 F.Supp.2d 95, 102 (D. Mass. 2010) (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003)). The proposed Settlement Classes, as defined in Section III.A above, meet the conditions set forth in Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3).

(i) Plaintiffs Satisfy the Requirements of Rule 23(a).

First, the proposed Settlement Classes are sufficiently large that joinder is impracticable, meeting Rule 23(a)'s numerosity requirement. *See New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-CV-11148, 2009 WL 10703302, at *2 (D. Mass. Mar. 30, 2009). SafeRent does not maintain data about the race or voucher status of applicants to its customers' rental housing. However, SafeRent's records indicate that between May 25, 2020 and September 27, 2023, more than 18,000 applications for housing in Massachusetts were assigned a SafeRent Score lower than the threshold that a housing provider set to recommend "accept" on an application. After accounting for duplicate applications and based on its own attempt to independently estimate from this population the number of individuals who may have sought to use a publicly-funded housing voucher and who may be Black or Hispanic, SafeRent estimated in October 2023 that the number of putative class members was between 3,300 and 4,200. Thus, there

can be no question that Plaintiffs satisfy numerosity.

Second, there are common questions of law and fact at issue, thus meeting the commonality requirement. *See Meaden v. HarborOne Bank,* No. 23-CV-10467, 2023 WL 3529762, at *2–3 (D. Mass. May 18, 2023) ("The 'threshold for commonality under Rule 23(a)(2) is not high.'" (internal citation omitted)). The gravamen of this lawsuit is that SafeRent, through the SafeRent Score product, has caused the disproportionate denial of housing to tenant applicants who use housing vouchers, allegedly in violation of the FHA and Massachusetts Discrimination Law. This is a common contention for each Settlement Class Member, and it can be satisfied using evidence common to the class. There are additional common questions, such as whether SafeRent could justify the use of its SafeRent Score product under standards for business necessity. The existence of these common questions satisfies the commonality requirement. *See First Databank, Inc.*, 2009 WL 10703302 at *2–3 (granting motion to certify a class for settlement purposes and describing common legal and factual contentions suitable for resolution on a classwide basis).

Third, typicality is satisfied. For this requirement, Plaintiffs need only demonstrate that their "injuries arise from the same events or course of conduct as do the injuries of the class" and that the Plaintiffs' claims and those of the Classes "are based on the same legal theory." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). Here, Plaintiffs' claims arise out of the exact same conduct—SafeRent's use of certain credit and tenant information in its calculation of the SafeRent Score provided to housing providers, which Plaintiffs allege resulted in the disproportionate denial of housing to applicants using vouchers. Because Plaintiffs allege that each member of the Settlement Classes was denied housing pursuant to the same practice by SafeRent, typicality is satisfied.

Fourth, the requirement for fair and adequate representation is satisfied. Named Plaintiffs Mary Louis and Monica Douglas have faithfully participated in this litigation for nearly two years, including maintaining regular contact with their counsel, providing information and documents upon counsel's request, familiarizing themselves with the facts and issues presenting in the case and attending the hearing on Defendants' motion to dismiss. If appointed as representatives of the

12

Settlement Classes, Ms. Louis and Ms. Douglas will continue to fairly and adequately protect the interests of the Class. *See Jean-Pierre v. J&L Cable TV Servs., Inc.*, 538 F.Supp.3d 208, 212 (D. Mass. 2021) (finding adequacy satisfied where each named plaintiff was involved in the prosecution of his claims and their interests were aligned with the class).

The Settlement Classes are also fairly and adequately represented by competent attorneys with specialized expertise in litigating housing and consumer rights class actions. *See Jean-Pierre,* 538 F.Supp.3d at 212. Plaintiffs are represented by Greater Boston Legal Services, a Massachusetts nonprofit that regularly provides legal advocacy to low-income renters who use housing vouchers; the National Consumer Law Center, a national nonprofit based in Massachusetts, which, for over 50 years, has worked for economic justice for low-income and other disadvantaged people; and the law firm of Cohen Milstein Sellers & Toll PLLC, one of the leading firms in the country handling major complex plaintiff-side civil rights and fair housing litigation, based in Washington, DC. *See* Declaration of Christine E. Webber attached as Exhibit 3 to Motion for Attorneys' Fees; Declaration of Todd S. Kaplan, attached as Exhibit 4 to Motion for Attorneys' Fees; Declaration of Shennan Kavanagh, attached as Exhibit 5 to Motion for Attorneys' Fees.

(ii) Plaintiffs Satisfy the Requirements of Rule 23(b)(2).

Plaintiffs also satisfy the requirements of Rule 23(b)(2). A class may be certified under Rule 23(b)(2) if the prerequisites of Rule 23(a) are met and the defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Classes certified under Rule 23(b)(2) "frequently serve as the vehicle for civil rights actions and other institutional reform cases." *Hawkins ex rel. Hawkins v. Comm'r of N.H. Dep't of Health & Human Servs.*, No. 99-143, 2004 WL 166722, at *4 (D.N.H. Jan. 23, 2004). Such is the case here.

As detailed above, Plaintiffs have advanced a common contention in this litigation: that SafeRent, through the SafeRent Score product, has caused the denial of housing to rental applicants who use housing vouchers. Put differently, Plaintiffs allege that SafeRent, by marketing and selling the SafeRent Score product and applying that product to applicants with vouchers, has acted or

13

refused to act on grounds generally applicable to the Classes. Accordingly, the Settlement Classes should be certified pursuant to Rule 23(b)(2).

In consideration of the foregoing, Plaintiffs respectfully request that the Court certify the Settlement Classes for purposes of injunctive relief under Rule 23(b)(2) and appoint Plaintiffs Louis and Douglas as Class Representatives and Plaintiffs' Counsel as Class Counsel.

(iii) <u>Plaintiffs Satisfy the Requirements of Rule 23(b)(3).</u>

Finally, Plaintiffs satisfy the requirements of Rule 23(b)(3). Rule 23(b)(3) provides that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy both predominance and superiority.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "This standard can be met if the common issues predominate, even if some individual issues arise in the course of litigation." *Meaden*, 2023 WL 3529762, at *3 (citations omitted). Plaintiffs allege that all Settlement Class Members are entitled to the same legal remedies premised on SafeRent's same alleged wrongdoing, and the issues affecting every Settlement Class Member are substantially the same. Thus, the Settlement Classes are sufficiently cohesive to satisfy predominance.

Superiority requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, where there are thousands of potential Settlement Class Members with claims resulting from a common issue, a class action is the most feasible mechanism for resolving the dispute. *See In re Relafen*, 231 F.R.D. at 70. Moreover, the Settlement Class Members here are individuals using housing vouchers, who, by definition, are people with limited financial means. It is therefore highly likely that the transaction costs in bringing individual lawsuits would be prohibitive. A class action is therefore the superior method for resolving the claims at issue in this litigation.

B.  Notice Should Be Issued Because the Proposed Settlement Agreement Is Likely
to Be Found Fair, Reasonable, and Adequate.

Issuance of class notice is appropriate upon a showing that the court will likely be able to approve the proposed settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B). A court may only approve a class settlement after finding that it is "fair, reasonable, and adequate," which requires considering whether: (i) the class representatives and class counsel adequately represented the class; (ii) the proposed settlement was negotiated at arm's length; (iii) the relief provided for the class was adequate; and (iv) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The fairness of the settlement should be considered with an appreciation of the strong judicial policy favoring the resolution of class actions. *See, e.g.*, *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters' Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009).

For the reasons described below, the proposed Settlement Agreement is likely to be found fair, reasonable, and adequate, and this Court should therefore direct notice to be issued to the Settlement Classes.

(i)  The Settlement Classes Are Adequately Represented by the Proposed
Class Representatives and Plaintiffs' Counsel.

Employing a two-step analysis, the Court must initially be satisfied that the settlement class was adequately represented during the litigation and settlement. *See In re Pharma. Indus. Avg. Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009) ("[T]he duty of adequate representation requires counsel to represent the class competently and vigorously and without conflicts of interest with the class.") (citing Fed. R. Civ. P. 23(g)(4)). First, the Court must determine whether the interests of the class representatives "conflict with the interests of any of the class members." *See Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). Second, the Court must be satisfied that Plaintiffs' counsel are qualified and experienced and were vigorously pursuing the interests of class before the settlement was reached. *Id.* As Rule 23(g) requires, the Court must also consider at settlement whether counsel have "experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law" and the resources that counsel committed to the prosecution of

15

the case before settlement was reached. *See* Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *accord Lapan v. Dick's Sporting Goods, Inc.*, No. 13-CV-11390, 2015 WL 8664204, at *3 (D. Mass. Dec. 11, 2015) (considering the guidance from Rule 23(g) in evaluating the adequacy of counsel).

There is no conflict between the proposed Settlement Class Representatives and absent Settlement Class Members because both groups share an interest in receiving the relief provided by the terms of the proposed Settlement. The proposed Settlement Class Representatives and members of the proposed Settlement Classes are people who (a) use or used publicly-funded housing vouchers during the class period and (b) were denied housing because of their SafeRent Score—all of whom will be able to obtain relief by the terms of the proposed Settlement. Accordingly, the proposed Settlement Class Representatives seek "the same remedy . . . based on an identical theory" as the rest of the class, rendering the interests of the class representatives "coextensive with the class." *Reid v. Donelan*, 297 F.R.D. 185, 191 (D. Mass. 2014).

Moreover, Plaintiffs have retained experienced and competent counsel who fairly and adequately protected the interests of the proposed classes throughout the litigation and during the negotiation of the proposed Settlement. Plaintiffs' Counsel have substantial experience litigating and negotiating settlements in class actions, including in the areas of housing, civil rights, and consumer rights law. *See* Section IV.A.i (citing

Plaintiffs' Counsel invested substantial time and resources in litigating this case and in negotiating the Agreement. *See* Motion for Attorneys' Fees and Exs. 3–5 attached thereto. Moreover, Counsel undertook the representation on terms by which their compensation was fully contingent on the outcome and the costs of litigation were advanced. Accordingly, there is ample evidence that undersigned counsel vigorously and fully represented the interests of the class in the litigation leading to its settlement. *See Connor B. v. Patrick*, 272 F.R.D. 288, 297 (D. Mass. 2011).

(ii) The Proposed Settlement was the Product of Arm's-Length Negotiation.

"A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel." *Nat'l Ass'n of Deaf v. MIT*, No. 15-CV-30024, 2020 WL 1495903, at *4 (D. Mass. Mar. 27, 2020)). When determining whether an agreement was

the product of an arm's-length negotiation, courts often consider the complexity and duration of the litigation, whether meaningful discovery was completed prior to settlement, whether the parties utilized a formal mediation process to negotiate the agreement, and whether the agreement was conditioned on an award of attorneys' fees and costs. *See, e.g.*, *Bacchi v. Mass. Mut. Life Ins. Co.*, No. 12-11280, 2017 WL 5177610, at * 2 (D. Mass. Nov. 8, 2017); *Hill v. State St. Corp.*, No 09-12146, 2015 WL 127728, at *7 (D. Mass. Jan. 8, 2015); *Disability Law Ctr. v. Mass. Dep't of Corr.*, 960 F.Supp.2d 271, 280-81 (D. Mass. 2012).

Plaintiffs researched and investigated this case for nearly a year before filing, collecting a substantial amount of relevant material from public sources, before even filing the lawsuit. *See* Motion for Attorneys' Fees and Exs. 3–5 attached thereto The Parties then litigated this case for over a year, including briefing and arguing SafeRent's motion to dismiss. And while formal discovery was not conducted, Plaintiffs requested and received documents and information both before and after the formal mediation session before Judge Welsh, allowing Plaintiffs to better understand the Parties' strengths and weaknesses in the case, and the potential damages the class could recover if litigation were successful.

After settlement negotiations that extended over three months, using a formal mediation process, the Parties settled all contested issues in the litigation, the terms of which are memorialized in the Agreement. *See Jean-Pierre*, 538 F.Supp.3d at 213 (granting preliminary approval where settlement was reached "through mediation and arms-length negotiation after two years of difficult litigation"). Negotiation of the terms of the proposed Settlement, moreover, was conducted without regard to the payment of Plaintiffs' attorneys' fees and costs, which was the last term that was negotiated.

        (iii) <u>The Proposed Settlement Provides Settlement Class Members with More than Adequate Relief.</u>

When determining whether a class settlement provides the class with adequate relief, a Court must take into account several factors, including "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). To determine how the costs, risks, and delay of trial and

appeal would impact the relief the class would be entitled to receive absent the settlement, courts often consider the likelihood of the class achieving a favorable result through litigation, the time it would take to achieve such a result, and the certainty that such a result would provide the class with more ample relief than the settlement. *See, e.g., Bacchi*, 2017 WL 5177610, at * 2; *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142, 2016 WL 8677312, at * 6-7 (D. Mass. Sept. 30, 2016).

The proposed Settlement provides Settlement Class Members with immediate, tangible benefits. Perhaps most importantly, the Settlement provides the Settlement Classes the full extent of injunctive relief they would have obtained had Plaintiffs succeeded in this case: termination of the SafeRent Score for applicants using vouchers, to be resumed only if SafeRent validates the SafeRent Score through the National Fair Housing Alliance or another similar organization. *See* Section III.B. This eliminates the allegedly discriminatory practice Plaintiffs challenged with this action, providing significant relief to Settlement Class Members who continue to use vouchers and apply for rental housing in the future with any Massachusetts housing provider that uses SafeRent's tenant screening services, without the risks associated with continued prolonged litigation. And as described above, SafeRent will pay a sum of $1,175,000 into a Settlement Fund, which will be used to make payments to Settlement Class Members to compensate them for any past denial of housing. *See* Section III.C. Settlement Class Members who submit valid and timely Claim Forms will receive *pro rata* payments from the Settlement Fund. *See* Section III.D.

By contrast, although Plaintiffs are confident they would have been successful were the underlying litigation adjudicated, the number of novel legal issues raised in this case would have required extensive additional briefing and argument, as well as additional discovery, all of which involves increased litigation risks. Moreover, even complete success on liability would still have left disputes over the magnitude of damages recoverable by class members, and even disputes over whether damages could be resolved on a class basis. *See Jean-Pierre*, 538 F.Supp.3d at 213 ("Considering the risk that the class might have received no recovery if this case proceeded to trial, the proposed settlement is likely to be found to be a fair, adequate, and reasonable resolution of this case."); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 97 (D. Mass. 2005) (risks

related to proving damages class-wide weighed in favor of approving settlement); *Mongue v. Wheatleigh Corp.*, No. 18-cv-30095, 2023 WL 5435918, at *7 (D. Mass. Aug. 23, 2023) ("The risk and expense of continued litigation could outweigh any additional recovery Plaintiff might obtain from a litigated outcome.").

(iv) <u>The Proposed Settlement Treats Class Members Equitably.</u>

The settlement agreement must also treat class members equitably by providing that the relief available to individual class members "is determined in accordance with objective criteria and…is neither limited nor enhanced by" the relief afforded to other class members. *Bussie v. Allmerica Fin. Corp.*, 50 F.Supp.2d 59, 75 (D. Mass. 1999). Here, all terms of the proposed Settlement apply equally, without qualification or reservation, to each Settlement Class Member, ensuring that all members of the Settlement Classes benefit in the same manner and to the same extent from the Settlement. Moreover, awarding a 1.5X share of the Settlement Fund to members of both the Massachusetts Income-Based Settlement Class and the Massachusetts Race-Based Settlement Class ensures that these Settlement Class Members are fairly compensated for releasing two claims (both income-based and race-based claims). *See Moreno v. Capital Building Maintenance & Cleaning Servs., Inc.*, 2021 WL 178847, at *7 (N.D. Cal. May 5, 2021) (finding settlement reasonable where class members with additional claim received larger share of settlement); *George v. TRS Staffing Sols., Inc.*, 2010 WL 11519346, at * (C.D. Cal. Sept. 13, 2010) (finding settlement reasonable where "[p]ersons who are members of both classes will receive separate payments for membership in each class").

C. <u>The Proposed Notice Satisfies Rule 23(e) and the Requirements of Due Process.</u>

Rule 23(e)(1)(B) requires that the Court "direct notice in a reasonable manner to all class members who would be bound by the proposal" in the event it grants preliminary approval of the settlement and certifies a settlement class. Notice must be "reasonably calculated to reach the absent class members." *Reppert v. Marvin Lumber & Cedar Co., Inc.*, 359 F.3d 53, 56 (1st Cir. 2004) (citation omitted). Moreover, the notice must be "the best notice that is practicable under the circumstances," as required by Rule 23(c)(2)(B).

19

The Parties have agreed on a proposed Notice (Exhibit 3) and method of distributing the Notice which is the most effective method of distributing notice to the class, based on the amount of information SafeRent has on prospective class members and the steps the Settlement Administrator will take to verify class membership. *See* Section III.D.

The proposed Notice is reasonably calculated to apprise Settlement Class Members of the pendency of this action and their rights to object. The Notice sets forth the background of the case, recites the proposed class definitions, outlines the main terms of the proposed Settlement, explains to Settlement Class Members how to object to the Settlement, opt out from the Settlement, and the deadlines for doing so, and informs Settlement Class Members how they can obtain more information about the proposed Settlement. *See* Ex. 3; Section III.D. The Notice explains to Settlement Class Members how to submit the Claim Form, which will be attached to the Notice and available on the Settlement Website. *See* Ex. 3; Section III.D. The Notice also provides information about how a class member may opt out of the Settlement or object to the Settlement at the final approval hearing. *See* Ex. 3; Section III.D.

For these reasons, Plaintiffs respectfully request that this Court approve the Notice and hold that this settlement preliminarily satisfies the requirements of Rule 23(e).

**V.     CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court enter an order: (1) conditionally certifying the Settlement Classes for settlement purposes; (2) appointing Mary Louis and Monica Douglas as Settlement Class Representatives and appointing undersigned counsel as Settlement Class Counsel; (3) appointing Epiq as Settlement Administrator; (4) approving the proposed Notice, including SafeRent's provision to the Settlement Administrator of identifying information for Settlement Class Members available in SafeRent's databases, and directing that the Notice be disseminated to the Settlement Classes by the Settlement Administrator; (5) setting a date ninety days from the date Notice is disseminated as the deadline for submission of any objections to the proposed Settlement; and (6) scheduling a fairness hearing on or after November 18, 2024—ninety days after the anticipated deadline for class members to object to the proposed Settlement.

Dated: March 28, 2024                        Respectfully submitted,

                                             /s/ Christine E. Webber
                                             Christine E. Webber (*pro hac vice*)
                                             Brian Corman (*pro hac vice*)
                                             COHEN MILSTEIN SELLERS & TOLL
                                             PLLC
                                             1100 New York Ave. N.W.
                                             Fifth Floor
                                             Washington, D.C., 20005
                                             Tel.: (202) 408-4600
                                             cwebber@cohenmilstein.com
                                             bcorman@cohenmilstein.com

                                             Todd S. Kaplan (Bar No. 634710)
                                             GREATER BOSTON LEGAL SERVICES
                                             197 Friend Street
                                             Boston, MA, 02114
                                             Tel.: (617) 371-1234
                                             tkaplan@gbls.org

                                             Shennan Kavanagh (Bar No. 655174)
                                             Ariel C. Nelson (Bar No. 705704)
                                             Stuart Rossman (of counsel)
                                             NATIONAL CONSUMER LAW CENTER
                                             7 Winthrop Square, Boston, MA, 02110
                                             Tel.: (617) 542-8010

                                             *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on March 28, 2024.

Dated: March 28, 2024                                   s/ *Christine E. Webber*